ADONIS AYCOCK *v.* BUDWEIS HAMPTON.

BASTARD. *Custody of. Putative father.*

> The mother of a bastard child being dead, the putative father, in the absence of any showing of his unfitness, is entitled, if able to take care of and support it, to the custody of the child, as against its maternal uncle.

FROM the circuit court of Alcorn county.

EUGENE O. SYKES, Judge.

Aycock, the appellant, was petitioner and plaintiff in the court below; Hampton, appellee, was defendant there. The suit was an *habeas corpus* proceeding, in which the plaintiff sought to obtain the custody of his bastard twelve-year-old daughter, Angeline Aycock, whose mother, one Celia Lust, was dead. The defendant was a brother of the child's deceased mother. The evidence showed that plaintiff was the father of the child; that it lived with its mother until she died, and it was then taken by Hampton; that relator was able to take care of and support the child, and that all the parties were colored people. From a judgment denying the prayer of the petition and dismissing the suit plaintiff appealed to the supreme court.

*Lamb & McKenzie,* for appellant.

Under the common law the mother was entitled to the care and custody of her bastard child, but at her death then the reputed father was entitled to its care and custody.

"The mother, as guardian by nurture, has the right to the custody and control of her bastard child, until it shall have attained an age when it can, in contemplation of the law, make an election between father and mother. If, on the other hand, the mother be dead, the father has the right to the custody and control of the child." 3 Am. & Eng. Ency. Law [2d ed.], p. 888.

"The putative father of an illegitimate child is entitled to the custody of the child, as against all persons but the mother; if the mother be dead and the father is a suitable person, it shall be taken from the maternal grandparents and delivered to him." Pote's Appeal, 51 Am. Rep., 540; *Commonwealth* v. *Anderson,* 1 Ash., 55; *Richards* v. *Hodges,* 2 Saund., 83.

"Though a bastard be not looked upon as a child for any civil purpose, the ties of nature are respected in regard to its maintenance. The putative father, though not legally related to it, is so far considered its natural guardian as to be entitled to the custody of it." *Moritz* v. *Garnhart,* 32 Am. Dec., 762; *The King* v. *Cornforth,* 2 Stra., 1162.

In the case of *Rex* v. *Cornfoot,* 1 Boot's Poor Laws, 465, it was held that a putative father has a natural right to the care and education of his illegitimate child.

*Boone & Curlee,* for appellee.

Appellant seeks to recover possession of the child on the ground that he is her putative father. The court below excluded the testimony and rendered judgment for the defendant, Budweis Hampton, upon the authority of the *Illinois, etc., R. R. Co.* v. *Johnson,* 77 Miss., 727, in which case this court held that under the common law bastards were children of nobody. Upon this authority the court decided that the appellant had

no rights whatever, even though it should be admitted that he was the father, and therefore dismissed the writ.

There is nothing in the record to show that the child is to be benefited by being delivered to him; there is nothing in the record to show that it is for the best interest of the child that she should be delivered to the appellant; but the case stands solely upon the question as to whether or not appellant is to be recognized under our laws as having such legal status with reference to this child as to entitle him to its possession. All the authorities agree that an illegitimate child is *nullius filius,* and this law must govern in this case, as held in the Johnson case above, unless there are some peculiar circumstances where a change should be made, such as being in *loco parentis,* as some of the authorities hold. There are no exceptions in the circumstances shown by this record. This man never having been in *loco parentis* or any other position with reference to this child prior to the bringing of this writ or up to this time, stands upon his naked right as putative father of the child.

Appellant's counsel evidently relies upon the abstract statement of the Cyclopædia of Law & Procedure, and the Am. & Eng. Ency. Law, to the effect that the putative father of the bastard is entitled to its custody against all but the mother, but an examination of the cases referred to by the authors to sustain their text does not sustain them in the broad assertions made by them. In this case counsel for appellant relies upon, as we are informed, *Pote's Appeal,* 106 Pa. St., 574. By examination of this case it will be seen that Pote's Appeal is based upon the case of *Moritz* v. *Garnhart,* 32 Am. Dec., 762, and upon examination of that case it will be seen that it is no authority for the conclusion reached in Pote's Appeal. Both of these cases are Pennsylvania cases, and whatever may be the opinion of the Pennsylvania court, as each court has a right to decide for itself what the common law is, and in the Johnson case, *supra,* this court has distinctly held that a bastard has no father, and in that same case holds that no state has gone

farther than our own in the line of strict construction, changing the common law so as to intend nothing not expressly mentioned changing that law. The situation of the bastard under the laws of Mississippi is in the exact condition set forth by the court in the matter of Doyle, Clark Ch. (N. Y., 154). The court, in discussing the relations between father and illegitimate child, said: "The first principle that meets me is that an illegitimate child has, in contemplation of law, no father. Such child is *nullius filius*, and there is, therefore, no father who is bound to support it, or can rightfully claim its care and custody. There are, it is true, certain statute regulations by which the putative father may be compelled to indemnify the community against the expense of supporting a child who may otherwise become a public charge. But these statutes only make the person charged a father for a particular purpose—viz.: For the indemnity of society against the expense of the support of the child. The paternal and filial relations, in all their endearing and legal consequences, do not exist between such a father and such a child. The law looks coldly upon this relation, and takes no further care of it than to see that the community is not put to expense."

The case of *Moritz* v. *Garnhart, supra,* was an action based on relation of master and servant, and to sustain the action in that case it was shown that the child had lived for several years prior to its abduction in plaintiff's family, and from this service was implied; and the action in that case was sustained on implied service, and had no bearing on the issue presented in this case, and Pote's Appeal is based upon this last case as its authority.

WHITFIELD, C. J., delivered the opinion of the court.

The putative father was entitled to the custody of his illegitimate daughter, about eleven or twelve years old. There is nothing to show that he was an improper person to have the custody of his child. The learned court below seems to have

proceeded on the idea that a putative father had no legal stand-
ing to maintain a writ of *habeas corpus.* The case of *Moritz*
v. *Garnhart,* 32 Am. Dec., 763, states the true rule. The
court say: "Though a bastard be not looked upon as a child for
any civil purpose, the ties of nature are respected in regard to
its maintenance. The putative father, though not legally re-
lated to it, is so far considered its natural guardian as to be
entitled to the custody of it. In *The King* v. *Cornforth,* 2
Stra., 1162, the court granted an information for the abduc-
tion of a natural daughter from the protection of her putative
father, thinking that a bastard is within the 4 and 5 Ph. & M.,
c. 8, which punishes the taking away of any maid or unmar-
ried woman child from the possession of the father, mother,
or person having the governance of it. Between the father and
the mother, however, the latter seems to have the prior claim.
*Ex parte* Knewe, 1 N. R., 148. In *Rex* v. *Cornfoot,* 1 Boot's
Poor Laws, 465, it was held that a putative father has a nat-
ural right to the care and education of his illegitimate child;
and in *Newland* v. *Osman,* Id. 466, he was allowed to take it
from the parish and maintain it. It may be safely said, then,
that the law recognizes the rights of putative paternity for
purposes of nurture and education." Pote's Appeal, 51 Am.
Rep., 540, also lays down the same doctrine, the court there
saying: "That the putative father was a proper person to
present this petition cannot, we think, be doubted. The puta-
tive father of an illegitimate child is entitled to the custody of
the child as against all but the mother. If the mother be dead,
and the father a suitable person, it shall be taken from the
maternal grandparents and delivered to him." *Commonwealth*
v. *Anderson,* 1 Ashm., 55. To the same effect are the English
cases: *Richards* v. *Hodges,* 2 Saund., 83; *Burwell's Case,*
Ventris, 48; *Sherman's Case,* Id. 210; and *Newland* v. *Osman,*
referred to in Burne's Justice, 234. In *Moritz* v. *Garnhart,*
7 Watts, 302, 32 Am. Dec., 762, it was said that, although a
bastard may not be looked upon as a child for any civil purpose,

the ties of nature are respected in regard to its maintenance. The putative father, though not legally related to it, is so far considered its natural guardian as to be entitled to the custody of it. The learned Chief Justice Lewis, delivering the opinion of the court, after a full discussion of all the cases, concludes as follows: "It may be safely said, then, that the law recognizes the rights of putative paternity for purposes of nurture and education." We may allow large abatements, perhaps, from the estimate which the law makes in respect of the natural tenderness of parents for their own offspring in cases like this, but it is certain that the rule referred to is grounded in that consideration." The 3 Am. & Eng. Ency. Law [2d ed.], p. 888, states the rule as follows: "The mother, as guardian by nurture, has the right to the custody and control of her bastard child until it shall have attained an age when it can, in contemplation of the law, make an election between father and mother. If, on the other hand, the mother is dead, the father has the right to the custody and control of the child." The distinction between the right of a bastard to assert its rights for any civil purposes in the courts is a very different one from that which entitles it to have the ties of nature, as regards its maintenance and nurture, enforced.

*Reversed and remanded.*