ILLINOIS CENTRAL RAILROAD CO. v. ANNIE SANDERS,

[61 South. 309.]

BASTARDS.   *Services.   Right to wages.   Mother.*

> The mother of a bastard child as a natural guardian has a right to the custody and control of the child and is bound to maintain it, and having assumed the custody, control and maintenance of the child, is entitled to recover from another the value of the services of the child, obtained without her knowledge or consent.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Suit by Annie Sanders against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*F. M. West,* for appellant.

At common law bastards had no rights worth boasting of, and the only rights they possess now are given them by legislative enactment. The common law did not permit an action of this kind. *I. C. R. R. Co.* v. *Johnson* 77 Miss. 727; *Alabama etc. Ry. Co.* v. *Williams* 78 Miss. 209.

104 Miss. 17

Our statutes of descent and distribution have been so amended as to give bastards certain rights which they had not at common law; and these statutes have also been so amended as to give bastards, and certain relatives of bastards, the right to maintain actions against railroad, etc., for personal injuries, etc., but we know of no statute in this state that gives the mother of an illegitimate minor the right to maintain a suit of the kind at bar. This is not a case of descent or distribution of property, neither is it one involving a claim for personal injuries; but is simply the question as to whether the mother is entitled to the services of her bastard minor, his wages in this case.

The only authority cited the trial court by learned counsel for appellee as to the right of the mother to such services is found in Am. & Eng. Ency. Law. (1 Ed.), 759 in the following language:

"The mother of an illegitimate child is entitled to its earnings so long as she has the right to its custody or control, and discharges her parental duties towards it."

That same authority is here relied upon by counsel.

The first case is that of *Robalma* v. *Armstrong,* 15 Barb. (N. Y.) 247.

The only question involved in that case was that the putative father abducted the child and the court held that the mother was entitled to its custody. The only thing in the decision that even tends towards counsel's contention is the following:

"If the parent sustains an injury for loss of service or for medical attendance by the abduction of the child he can maintain an action for that cause."

The next case is that of *Pepple* v. *Kling,* 6 Barb. (N. Y) 366. That case simply held that as against the putative father the mother was entitled to the custody of the child. No other question was presented.

In the case of *In the matter of Dodge,* 1 Clark's Chy. (N. Y.) 154, the only question decided there was that the mother of a child of tender years was entitled to its custody as against the putative father.

The case of *Carpenter & Rose, etc.,* v. *Whitman et al,* 15 Johns. (N. Y.) 208, has no application. That case decided that the mother of a bastard child three or four years old is entitled to its custody, and the putative father and his surety on a bond for the maintenance of the child cannot exonerate themselves from liability by demanding the child.

In the case of *People* v. *Landt,* 2 Johns, (N. Y.) 375, the decision was that the mother of the bastard was entitled to its custody against the putative father. The child was nine years of age.

The case of *Wright* v. *Wright,* 2 Mass. 109, merely decided that the mother of the bastard was entitled to its custody and should hold it as against the putative father, after marriage and divorce. The child was three or four years of age.

In *Commonwealth* 1. Fee, 6 S.. & R. (Penn. 255) the court only held that the mother was entitled to the custody of her two-year-old bastard child as against the grandfather who had obtained possession of it through artifice.

In *Celina* v. *Gentes,* 7 La. Ann. 162, the question was that Higgins and wife had possession of an abandoned child, its parents being unknown. Higgins, having been appointed tutor by the recorder of the third municipality, one Gentes pronounced an act before a notary public, that the mother was dead and that the child belonged to him as the natural father. The court decreed the child to him. It was a girl of about five years of age.

The other case found in *Com.* v. *Anderson,* 1 Ash. (Pa.) 55, could not be found as the book was not in the state library, but we feel that we risk no chance in saying that it probably comes about as near the question as the case already called to the court's attention.

It is a little singular that the above announcement of text law as found in said first edition of the Am. & Eng. Ency. of Law should not have found its way into the second edition of that work. It cannot be found in Cyc. nor

in any other standard encyclopedia, by us, and we challenge counsel to so find it.

The other cases cited by counsel in support of his statement that, "the mother as a natural guardian has a right to the custody and control of the child, and is bound to maintain it," come equally as near to supporting the proposition that she has the right to maintain a suit for his services, and can sue for his wages as the ones we have adverted to.

The court will note that some of the cases cited by counsel in support of the excerpt from his brief just mentioned, are cited as authority for the proposition that the appellee could maintain this suit, the inapplicability of which we have just pointed out to the court.

We have no difficulty in agreeing with counsel's remaining statement of the law that, "the mother's right as natural guardian to the custody and control of a natural son is superior to anyone else."

But counsel will not be able to find a single case that holds that appellee can maintain a suit for her bastard's services and wages.

At common law the bastard was *nullius* and the only obligation his mother owed him was that she would support and maintain him until such time as he could shift for himself. He was the founder of a new family, a new race; he was a son of no one, and could inherit from no one.

He was "tainted." Rights were afterwards given him, and to his mother, and to his other relatives, by statute, not by the common law, and we say that now, unless the statutes grant to the bastard, his mother, his other relatives, certain rights and privileges, he has no more, in this day of enlightment, than he possessed in the time when Shakespeare has a father of "a new race" to say: "There was much sport at his making."

We say that the Mississippi statutes are not broad enough to sustain an action of the kind at bar; every presumption is against the contention made by appellee. Ap-

pellee has no cause of action; and the burden of proof is upon the appellee to show clearly such a right.

*Powell & Thompson,* for appellee.

The mother as a natural guardian has a right to the custody and control of the child and is bound to maintain it; see *Daulton* v. *State,* 6 Blackf. 357; *Copeland* v. *State,* 6 Ind. 394; *Baker* v. *Windfry,* 54 Ky. 504; *Wright* v. *Wright,* 2 Mass. 109; *Summerset* v. *Dighton,* 12 Mass. 383; *Petersham* v. *Daner,* 12 Mass. 429; *Friesner* v. *Symonds,* 46 N. J. Eq. 521; *People* v. *Landt,* 2 Johns. 375; *Carpenter* v. *Whitman,* 15 Johns. 208; *Com.* v. *Fee,* 6 Serg. 255.

The mother's right as natural guardian to the custody and control of a natural son is superior to anyone else, 5 Cyc. 637, and numerous cases there cited.

The mother of a natural child is entitled to its earnings so long as she has the rights to its custody and control and discharges her parental duties toward it.

*Robalma* v. *Armstrong,* 15 Barb. (N. Y.) 247; *People* v. *Kling,* 6 Barb. (N. Y.) 366; *Carpenter* v. *Whitman,* 15 Johns. (N. Y.) 208; *People* v. *Landt.* 2 Johns. (N. Y.) 375; Matter of Dodge, 1 Clark's Cr. (N. Y.) 184; *Wright,* 2 Mass. 109; *Com.* v. *Fee,* 6 S. & R. (Pa.) 255; *Com.* v. *Anderson,* 1st Ash. (Pa.) 55; *Matter of Celina,* 7 La. Ann. 162.

The contention of appellants that they are entitled to an offset in this case for board is not well founded. In the first place there was no plea of payment or offset filed, and in the second place the testimony shows that the board was paid to Mr. Simmons, who was not representing the railroad company in a boarding house capacity, but as far as boarding the hands were concerned, I should judge from the testimony he was acting for his private benefit.

I think for the reason set out in the above the case should be affirmed.

COOK, J., delivered the opinion of the court.

Annie Sanders was the mother of Henry Lyles, a thirteen-year-old boy, the product of the mother's illicit relations with some undisclosed paramour. Stated in another way, Henry was the bastard son of Annie. The appellant railroad company, through its employees, employed Henry, without the knowledge or consent of his mother, and this suit was for the value of Henry's services when working for the company. The trial court rendered a judgment in favor of the mother, and the railroad company appeals.

It is the contention of appellant that the mother of a bastard cannot recover for the services of the bastard, because, by the common law, the bastard was *nullius filius*. The mother, as a natural guardian, has a right to the custody and control of the child, *and is bound to maintain it*. American Digest (Century Edition) vol. 6, p. 1835. section 19, and authorities there cited. This court has decided that the putative father of a bastard is so far considered its natural guardian as to be entitled to the custody of it. *Aycock* v. *Hampton,* 84 Miss. 204, 36 South. 245, 105 Am. St. Rep. 424, 65 L. R. A. 689. In *Railroad Co.* v. *Johnson,* 77 Miss. 727, 28 South. 753, 51 L. R. A. 837, and in *Railroad Co.* v. *Williams,* 78 Miss. 209, 28 South. 853, 51 L. R. A. 836, 84 Am. St. Rep. 624, this court, in construing our statute giving to relatives of a deceased person a right of action against a corporation causing his death, held that the statute referred to legitimates and not to bastards.

It being established that the mother of a bastard is entitled to the custody and control, and is under obligations to maintain her bastard children, because she is considered their natural guardian, as a necessary corollary of these rights and obligations, does it follow that she is also entitled to the services of her illegitimate children? If she is clothed with authority to enforce the obedience of the child, and to demand from it its services, what are her rights with respect to recovering from

another the value of the services of her illegitimate child, obtained without her knowledge or consent? This record propounds these questions. The bastard is *nullius filius*—a "woods colt," so to speak; but it does not follow that anybody may bridle such an animal, without let or hindrance from the owner? In this instance, the mother had assumed the custody, control, and maintenance of the boy, and we are of opinion that, having assumed the obligations of a natural guardian, she had the first claim upon his services, and, found running on the commons, it was the duty of the railroad company to account to her for his services, to which she was entitled by every rule of reason, justice, and law, in return for the burdens and cares of maintaining him.

It cannot be contended that the mother would incur the penalties of the law for inflicting upon the boy proper and reasonable corporal punishment, when he needed and had earned it; and, if not, why not? The reason is that with the burdens she obtains the rights of a parent, or of a person *in loco parentis,* to adopt reasonable means necessary to the well-being and proper rearing of the child. True, it has been held that an illegitimate cannot maintain an action for the death of an illegitimate kinsman; but the reason for this decision was that the statute giving that right to certain of the kindred of the deceased had reference to legitimate kindred. However that may be, we are of opinion that the natural guardian—the mother of the child—has the same right to sue for his services as a legally appointed guardian would have; for with the burden of maintaining follows the right to control the services of the child, and the right to control necessarily implies the right to compel the child to render such reasonable service to his mother as his age and abilities justified or required, and, having been deprived of his services, it logically follows that she could sue for and recover their value.

*Affirmed.*