[No. 4019.]

THE PEOPLE EX REL. V. BOLTON.

1. INFANT—*Custody—Statute Construed.* Every child is under the control of the state. In disposing of the custody of a child, the paramount consideration is the child's welfare, to which even the paternal right must yield. (43.)

The statute confers upon the guardian no greater right to the custody of his ward than had the parent at common law. (42.)

The issuance of letters of guardianship on *ex parte* application is not such an adjudication as to conclude the courts from depriving the guardian of the custody of the ward. (43.)

2. ——— *Religious Training—Statute Construed.* Notwithstanding the provisions of the statute (Rev. Stat. Secs. 559, 2912-2914, Laws 1913, 694), the wishes of the parent as to the religious training of the child are subordinated to the controlling consideration of the child's welfare. (44.)

3. APPEAL AND ERROR—*Findings on Conflicting Evidence.* Proceedings in *habeas corpus* for the custody of a child are an exception to the general rule that findings of fact will not be disturbed in the court of review, unless manifestly against the weight of evidence.

The testimony being substantially in equipoise, the court refused to disturb the findings of the trial court.

4. ——— *Harmless Error*—Habeas Corpus for the Custody of an Infant. The court below declining to commit the child to the custody of the guardian failed to order that the respondent should, in its religious training, conform to the expressed wishes of the deceased parent. *Held,* in view of the declared willingness of the respondent to comply with the parent's wishes, and that the court below might at any time, upon application, make the order, the error was not fatal. (45.)

*Error to Denver District Court.* HON. JAMES H. TELLER, Judge.

MR. JOHN H. REDDIN and MR. PATRICK D. CONNOR, for plaintiff in error.

Mr. GEO. B. CAMPBELL, for defendant in error.

KING, J., delivered the opinion of the court.

This is a habeas corpus proceeding, involving the right to the custody of Mary Flannery, a minor child, as between its legal guardian (the relator herein) and the respondent. Relator's petition was denied, and the custody of the infant awarded to the respondent.

The essential facts are as follows: At the time this proceeding was instituted the child was about five years of age. Its parents were dead. Relator was paternal uncle of the child, and the duly appointed, qualified and acting guardian of its person and estate. The mother died when the child was about nine months old. Thereupon the father delivered the child to respondent, who received it into her family, and thereafter retained and cared for it, for which the father paid her $7.50 per month. In October, 1912, the father demanded the possession of the child, and, upon refusal of the demand, he brought suit in habeas corpus. While the suit was pending and undecided, although after much evidence had been taken, the father died; whereupon the relator herein, having been appointed guardian, commenced this suit. It was the purpose of the father, and also of the guardian, to secure possession of the infant, in order to place it in St. Clara's Orphanage, an institution conducted by the Franciscan Sisters, a Sisterhood in the Roman Catholic church, to the end that, in addition to receiving care and a common education, it should be educated in the principles of that church, to which its parents belonged; taught to respect the religion which they professed, and hold to

the faith by which they lived and in which they died.

Respondent's chief defense to the petition was that the change of custody would be detrimental to the interests of the child; and that its welfare would be best promoted by remaining in her custody and under her care. The evidence shows that St. Clara's Orphanage is one of the best institutions of that kind maintained by the Catholic church, situated in a healthful location, well equipped, under the charge of a suitable number of Sisters, maintained in part by contributions from relatives of the inmates and in part by others charitably disposed; that the girls received in the institution are comfortably clad, have proper food, receive a common school education and thorough religious training in the tenets of the Catholic church; that if both parents are dead, and there is no legal guardian, girls at the age of twelve or thirteen years are, by the influence of the Sisters, "adopted into" Catholic homes. The estate of the infant consisted of an interest in real estate, inherited from its father, and some insurance on his life, of which it was beneficiary. Respondent has a husband and three children, a comfortable home, and the income from the husband's labor is sufficient to support the family. At the request of both the father and the mother of the child, the respondent took charge of the infant. At the time it was in very delicate health, and greatly in need of a mother's care. It is in evidence that respondent cared for it as if it had been her own child, and, because of its delicate health, gave it more attention than she had given her own. In deference to the wishes of the parents, she took it to a Catholic priest for baptism and other ceremonies peculiar to that church, and expressed a willingness to have it reared in that faith. Testimony in her behalf, some of which was of an expert medical character, tended to show that the child was undersized, frail, and of uncertain appetite, required special diet; that it was greatly attached to respondent, who reciprocated its affection; that the change in surroundings and separa-

tion from its foster mother would be detrimental to the interests of the child. This medical testimony was strongly combatted by testimony of Dr. Carlin, physician to St. Clara's Orphanage, who was acquainted with the infant and its parents, and with the treatment accorded inmates of the orphanage.

The plaintiff in error contends for reversal of the judgment upon three main propositions: (1) The relator, as guardian of the person and the estate of the child, is entitled to her custody under the statutes of this state and the law; (2) the law and the evidence on the question of the child's welfare require that the guardian be given its custody; (3) the civil and the moral law require that the wishes of the child's parents in regard to its religious training be respected and enforced when the courts are called upon to award its custody.

1. The statute provides that guardians shall educate their wards, and that for the purpose of the education and nurture of the ward the guardian shall have power, under the direction of the County Court, to direct the same; and further provides that should the guardian refuse or neglect to so educate his ward, the court shall have power to put out the ward to some other person for the purpose of its education. Under this statute, upon production of letters showing that he was the duly appointed guardian of the person and the estate of the infant, relator, *prima facie*, was entitled to the custody of his ward, and it was his duty to take it into his custody for the purpose of its ducation and nurture, and to direct the same. Counsel for relator contends that under these statutes and letters of guardianship, the District Court is powerless to deprive relator of the custody of his ward and award it to the respondent; that the issuance of the letters constitutes an adjudication as to the right of custody. With that contention we do not agree. The statute confers no greater right, power or duty over the ward than the parents had at common law and

under the statute to the custody and control of their off-spring. In this jurisdiction it has long been held that every child is under the control of the state, and even the paternal right to its custody and control must yield to the interests and welfare of the child, and that the paramount and controlling question by which courts must be guided in proceedings affecting the custody of the infant is the interest and welfare of the child. *McKercher v. Green*, 13 Colo. App., 270, 58 Pac., 406; *Wilson et al. v. Mitchell*, 48 Colo., 454, 111 Pac., 21, 30 L. R. A. (N. S.), 507; *Breene v. Breene*, 51 Colo., 342, 117 Pac., 1000; *People ex rel. Broxholm v. Parks*, 141 Pac., 994. We think the right of the guardian to the custody of his infant ward is subject to the same limitations, herein announced, as are the parent's. Moreover, we do not regard the issuance of letters of guardianship, on an *ex parte* application, as an adjudication of the right to the custody of the ward that concludes the court in this case from depriving the guardian of that custody in the interests of the welfare of the ward.

2. The trial court found, as a fact, from testimony which it deemed sufficient to sustain it, that the child's interest, welfare and happiness would be best promoted and subserved by leaving her in the home of the respondent. This finding was based in part upon the further findings of fact that the child is delicate, under the normal size, and requires special attention as to diet; that respondent has provided, and is able and willing to continue to provide, a comfortable home for the child, with healthful and moral surroundings, where she has been and is surrounded by strong affection and constant and loving care. The court was of the opinion that these considerations are not overcome by, but are of greater weight than, the fact that the religious training in the orphanage would be more thorough than the training promised by the respondent. Notwithstanding the fact that cases of this character are an exception to the usual rule that the findings of fact of the trial

court will not be disturbed on appeal unless manifestly against the weight of the evidence, and the further fact that the evidence in this case seems to be very evenly balanced, so that if the trial court had found for the relator instead of the respondent, its judgment would not be disturbed, we do not feel justified in reversing the trial court in the finding made.

3. The third assertion of counsel, to wit, that the civil and moral law require that the wishes of the child's parents in regard to its religious training be respected and enforced when the courts are called upon to award its custody, cannot be successfully denied. It is expressly provided by our statute that the surviving parent may, by deed or last will, dispose of the custody and tuition of his child during its minority, and that such disposition shall invest in the person or persons named by the parents all the rights, powers, duties and obligations of a guardian of such minor, and that such testamentary guardian may maintain all proper actions for the wrongful taking or detention of such ward Sections 2912, 2913 and 2914, R. S. '08. The right to the disposition of the custody, tuition and nurture of a minor as provided for in said statutes, and the duty of the enforcement of such right by the courts, has been recognized to the extent that, in the absence of testamentary disposition, the expressed or presumed wishes of the parents in this respect, including religious training of the minor, has been enforced with great uniformity. *Cozine v. Horn,* 1 Brad. Sur. (N. Y.), 143; *Matter of de Marcellin,* 24 Hun. (N. Y.), 207; *Matter of Turner,* 19 N. J. Eq., 433; *In re Doyle,* 16 Mo. App., 159; 29 *Cyc.,* 1600. The same principle is incorporated into other provisions of the statute. Section 559 R. S. '08 says:

"In providing guardianship under the terms of this act for any dependent child the court may, as far as practicable, provide such guardianship as conforms to the religious faith of the parents of the child."

And in the Mothers' Compensation Act. Session Laws 1913, p. 695, it is provided that:

"Petitions and commitments under this act shall state the religious belief of the parents, if known, and if not known the court shall endeavor to ascertain such fact, and family homes to which children are committed shall, as far as practicable, conform to such religious belief."

Nevertheless, all of these provisions of the statute and rules of the common law are subject to the paramount and controlling question of the welfare of the infant, and cannot prevail to reverse the judgment, unless the finding of fact of the trial court as to the welfare of the child shall first be reversed.

4. Counsel further contends that the court committed reversible error by failing to specifically order that respondent carry out the wishes of the parents as to the religious education of the child. Such an order might well have been incorporated in the judgment, but in view of the expressed willingness of the respondent to comply with such wishes, and the evidence that she had, to some degree at least, so complied, and because the infant is still under the charge and control of the proper court, which may make further orders if its powers are suitably invoked, we think the failure of the court to make such order, if error at all, is not fatal.

*Judgment affirmed.*