# CHARLESTON.

### EARL MOORE v. DELSIE HUGHES.

Submitted February 1, 1921.     Decided February 15, 1921.

1. HABEAS CORPUS—*Burden of Proof Resting on Mother in Fath-
   er's Proceeding to Determine Custody of Child Stated.*

   The mother of a child, having it in her possession by per-
   mission of the father to whom its permanent custody had been
   awarded by the decree of a court of competent jurisdiction
   which also dissolved the marriage of the parties, in order to
   make good her defense to a writ of *habeas corpus* sued out by
   the father, for vindication of his natural and adjudged right
   of custody, must either establish a relinquishment of such
   right in her favor, by agreement, or new and altered condi-
   tions of the parties making a change of permanent custody
   promotive of the interests of the child; and, as to both issues,
   the burden of proof rests upon her. (p. 725).

2. SAME—*Finding on Conflicting Evidence Will Not be Disturbed.*

   If, upon the first one of such issues, the documentary evi-
   dence relied upon by the respondent and the conduct of the
   parties were inconclusive and the oral evidence directly con-
   flicting and contradictory, the finding of the trial court thereon
   in favor of the father will not be disturbed by the appellate
   court. (p. 725).

3. SAME—*Finding Relative to Custody of Child Not Disturbed Unless Contrary to Weight of Evidence.*

   Nor will a like finding upon the second one of such issues be so disturbed, unless it is contrary to the weight and preponderance of the evidence as to the material facts in issue, with respect to which the child's interests are to be considered and determined. (p. 725).

4. SAME—*Findings Within Court's Discretion As to Custody of a Child Between Divorced Parents Will Not be Disturbed.*

   The trial court's exercise of its sound and reasonable discretion, within the limitations of law, in the award of the custody of a child, as between its divorced parents, will not be disturbed by the appellate court. (p. 727).

Error to Circuit Court, Cabell County.

Habeas corpus by Earl Moore against Delsie Hughes, to obtain the custody of a female child. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*D. B. Daugherty,* for plaintiff in error.
*Williams, Lewis & Coffey,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment in *habeas corpus,* complained of on this writ of error, awarded the custody of a female child to its father. The principal grounds of defense set up by the respondent to the writ, the child's mother, were complete relinquishment to her of the father's right of custody, by agreement, and promotion of the child's interest by the custody of the mother.

By the decree of a court of the State of Illinois, pronounced in May 1915, the father obtained a divorce from the mother, on the ground of adultry, and right of custody of the child. At that time, he resided in said state, with his mother who has since died. A widowed sister having children and grandchildren now keeps house for him. There seems to be no doubt of his financial ability to give the child proper care, nor of his personal integrity. At the time of the taking of his testimony, he had an income of $160.00 per month from his services. He has several sisters any one of whom, he says, is willing to keep the child for him. One of his letters to his former wife indi-

cates his possession of some money and ownership of some land in the State of Missouri.

The alleged agreement, if any, by which he parted with the right of custody given him by the decree above referred to, was made on or about Sept. 5, 1917. Having been drawn for military service, or intending enlistment therein, he permitted the respondent who had married her alleged paramour, soon after the decree, to take the child into her care. He claims his relinquishment was only temporary. She claims, on the other hand, that it was absolute and permanent. Their testimony as to the character of the agreement is indirect and in absolute conflict. It was largely effected by correspondence that has not been preserved. Several letters written by the father to the mother, while he was in military service, and one written after his discharge, have been produced. All of them manifest his deep and sincere interest in the child, but they are indefinite as regards its permanent custody and the character of the agreement under which its custody was changed, in view of the father's intended absence and the dangers he was then about to encounter. Some expressions found in them seem to imply expectation that the child's future would depend upon the mother's care of her; but they were written under circumstances calculated to create a grave doubt as to whether the writer would ever return, and these expressions may well be regarded as being hypothetical. He said he wanted the child educated and indicated the amount of money and property that would be available for such purpose, as well as the means of obtaining it. In a letter written about four months after he entered the army, he said he had not felt right to keep the child away from its mother, nor to let the mother have its custody while he was so situated that he could keep it, and that his joining the army had afforded him an excuse to let the mother have it.

The attitudes of the parents toward one another, after the divorce, were not such as precluded all communication. While the child was with the father, the mother visited it several times. He says she had frequently asked for its possession and custody, and that, knowing her desire to have it, he wrote her to come and take charge of it, near the date of his departure

for the army; but that he never intended to effect a permanent change of custody. She says he requested her by letter to come and take the child, saying he had enlisted, and that she hurriedly went to the home of his sister and got it. After his discharge in March, 1919, she, at his request, took the child with her on her way to see her mother, and left it for a visit with him, and brought it back on her return, and he repaid her part of the expense of the trip. In the only produced letter of his, written after his discharge, he made no demand for possession of the child, nor did he disclaim right to her possession, in himself. In it, he resented something the mother had said about money for the child's support, and expressed his willingness to take her in the event of the mother's tiring of her care. He also declared his intention to do everything in his power for the child's education, at the proper time, which had not yet arrived.

Evidently, he was either undecided as to reassertion of his right of custody or anticipated opposition to such a course, after his discharge, for his conduct was hesitant and equivocal. When the mother took the child to him for a visit, he made no effort to retain it. After that incident, he visited the child at the mother's home and requested permission to take her home with him for a visit. Later he came again and endeavored to obtain possession of her. He says he demanded permanent possession of her and, compliance with his demand having been refused, he obtained permission to take her to Huntington for a short visit. After his arrival at Huntington, he attempted to take her on to his home, but his effort to do so was frustrated by the mother's brother. Then he sued out the writ on which this judgment was rendered.

The conflict in the oral evidence as to the character of the agreement under which the mother obtained the child has been passed upon by the trial court. Upon it as well as the correspondence and circumstances disclosed, there has been a finding in favor of the father. As to that issue, the mother obviously carried the burden of proof, since the right of custody had previously been vested in the father by a decree of a court of competent jurisdiction. Nothing found in the evidence or facts and circumstances disclosed, justifies disturbance of the finding

against her. Read in the light of the situation of the parties at the time, and especially that of the husband, the letters produced are not conclusive of the issue, nor strongly probative of complete relinquishment of right of custody. In view of this conclusion, the issue turned mainly on the conflicting oral evidence, and the trial court had the aid and advantage of observation of the parties and their demeanor on the witness stand, which we do not have. The evidence casts no reproach upon the character of the father. The mother imputes no moral delinquency of any kind, to him. She charges nothing more than that he had slapped her face, and, for all that appears in the case, he may have been gravely provoked to that act by her misconduct. She has been adjudged guilty of very grave misconduct before the severance of the marriage tie. These circumstances have important bearing upon the credibility of the parties as witnesses, an element lying peculiarly within the province of the trial court.

Failure of the effort to establish relinquishment of the father's natural right of custody, emphasized and reinforced by a judicial award thereof, places the further burden upon the mother to show sufficient cause for a transfer thereof to her, and, so far as we can see, she has shown none. The father's fitness and ability to give the child proper care and attention both stand unimpeached. His moral character is unblemished. Nothing is said against the character of his sister who keeps house for him. He is amply able to provide for the child's support and education. Even though the mother may be equally able to do so, the father has superior right in law. *Hurley* v. *Hurley*, 71 W. Va. 269; *Green* v. *Campbell*, 35 W. Va. 698. Of course, the legal rule giving the father preference is not an inflexible one. It must yield to the welfare of the child as disclosed by all of the circumstances. *Cariens* v. *Cariens*, 50 W. Va. 113. Here, however, nothing appears in the circumstances that can be deemed to be sufficient ground for deviation from the general rule. Through her husband, the mother is able to support the child, but her husband is a contractor and has no settled place of abode. This is not a controlling circumstance, of course, but it has bearing and weight upon the inquiry. The child needs female care and attention, but she will have that

under the father's custody, and, presumptively her residence will be fixed and permanent.  The aunt with whom she will live is a woman of mature age and the mother of grown children, and nothing has been shown against her character or fitness.  As much cannot be said for the mother.  All of these considerations must be invoked in aid of the trial court's decision.  Besides, the parties were before the judge of that court; and he was in a position to see whether the mother's demeanor was such as to indicate the fitness and stability of character she ought to have as custodian of the child.

In respect of the custody of children, the trial courts have a measure of discretion, the exercise of which will not be disturbed by the appellate court, in the absence of a disclosure of a departure therein from soundness and reason or an abuse of sound discretion.  *Gates* v. *Gates,* decided at this term; *Williams* v. *Hicks,* (Ga.) 110 S. E. 97.

Seeing no error in the judgment complained of, we will affirm it.

*Affirmed.*