# Staunton.

## CHARLOTTE HAYES v. STEVE STRAUSS.

September 20, 1928.

The opinion states the case.

*R. T. Irvine,* for the plaintiff in error.

No appearance for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is a *habeas corpus* proceeding brought to determine the proper custody of William Stevenson Hayes, a bastard colored infant, born January 9, 1926. Its mother, Carlsetta Hayes, died November 18, 1926. After her death Charlotte Hayes, the mother of Carlsetta, because of temporary conditions, consented that Scott Strauss and his wife, Kate, father and mother of the petitioner, might take and keep the child until the following spring. This they did. In June following the grandmother applied to Judge Camblos, of the juvenile and domestic relations court, for authority to take their child back. A warrant, the exact purpose of which is not shown, was issued and served on Scott Strauss and wife, but was afterwards dismissed for want of jurisdiction. Then, "Judge Camblos, without having any legal proceedings brought, directed Scott Strauss and his family to return the child to Charlotte Hayes, which they did."

In August, 1927, Charlotte swore out a warrant before the mayor of the town of Big Stone Gap, and under that authority the town sergeant took this child

from the father and restored it to the grandmother, Charlotte. She was duly appointed guardian by an order of the Circuit Court of Wise county of date July 7, 1927.

It will be observed that we are not dealing with a dependant, abandoned or delinquent child, whose care had been taken over by the juvenile court. There was never any order awarding its custody to the grandmother, and her rights, such as they are, rest upon no such order but upon the provisions of section 5320 of the Code of Virginia, which in turn are themselves, by express language, subject to the superior rights of the father and mother. This authority, conferred by statute, is limited to those named in the statute, and does not extend to grandparents. *Mathews* v. *Wade*, 2 W. Va. 464. These statutory rights must of course be respected, but as was said in *Fleshood* v. *Fleshood*, 144 Va. 767, 130 S. E. 648: "Many citations might be added but through them all runs the fixed purpose to advance the interest of the child. This is ever the dominant consideration."

While the power is not lightly to be exercised, courts do not hesitate to take an infant from both the father and mother when its interest requires such action, and for a stronger reason this authority may be asserted in the case of a guardian.

The evidence shows that Carlsetta, before her death, requested that her baby be given to Steve Strauss whom she recognized as his father. We have already seen how its custody was dealt with after the mother's death. It appears that this father is an industrious young negro, of good habits, steadily employed by the Southern Railway at a salary of $140.00 a month. His father and mother with whom the child would actually live, and who are anxious to take it,

have a comfortable home, worth about $3,000.00. Respondent is a cook, working for $40.00 a month. She also has a home, but is necessarily away from it much of her time. When absent the child is left in the care of a daughter between fifteen and sixteen years old, who is accustomed to roam the streets, and whose character has been questioned.

In our approach certain principles are to be remembered.

"The judgment of a court of competent jurisdiction is always presumed to be right until the contrary is shown, and a party in an appellate court alleging error in the court below must show it in the regular way, or the presumption in favor of its correctness must prevail." *Harman* v. *City of Lynchburg*, 33 Gratt. (74 Va.) 43; *Day* v. *Grove*, 142 Va. 550, 129 S. E. 368.

It is likewise true that when a case is submitted to a judge who sees the witnesses and hears them testify, his judgment is entitled to the utmost consideration, and is usually accorded all the force of a jury's verdict. *Newton* v. *White*, 115 Va. 845, 80 S. E. 561.

Many cases hold that this rule should be relaxed in *habeas corpus* proceedings, and that they should be heard by appellate courts on their merits. *People* v. *Bolton*, 27 Colo. App. 39, 146 Pac. 489; *Moore* v. *Hughes*, 87 W. Va. 722, 106 S. E. 35; *Garfinkle* v. *Sullivan*, 37 Wash. 650, 80 Pac. 188, and 29 C. J., section 228. Of course, in any circumstances, it is necessary to show that the judgment is against the weight of the evidence, which is but another way of saying that the burden is upon the appellant to show error. Here it is not against the weight of the evidence, and that suffices.

What are the rights of a guardian?

In *People* v. *Bolton, supra,* the court said: "We think the right of the guardian to the custody of his infant ward is subject to the same limitations, herein announced, as are the parents. Moreover, we do not regard the issuance of letters of guardianship, on an *ex parte* application, as an adjudication of the right to the custody of the ward that concludes the court in this case (a *habeas corpus* proceeding) from depriving the guardian of that custody in the interest of the welfare of the ward."

When we come to consider the primary rights of the father, it is to be remembered that we cannot assume him to be wanting in affection because his child is illegitimate.

In *Aycock* v. *Hampton,* 84 Miss. 204, 36 So. 245, 65 L. R. A. 689, 105 Am. S. J. Rep. 424, his right to recover from maternal relations after the death of the mother was upheld in a *habeas corpus* proceeding.

In *Moritz* v. *Carnhart,* 7 Watts (Pa.) 302, 32 Am. Dec. 763, the court said: "Though a bastard be not looked upon as a child for any civil purpose, the ties of nature are respected in regard to its maintenance. The putative father, though not legally related to it, is so far considered its natural guardian as to be entitled to the custody of it."

See also *Pote's Appeal,* 106 Pa. 574, 51 Am. Rep. 540, and *Barela* v. *Roberts,* 34 Texas 554.

In 7 C. J. 955, the law is thus stated: "On the death of the mother the father has the right to the custody and control of the child, provided he is able to take care of and support it.

"On legitimation the child is subject to the custody and control of the father to the same extent as in the case of a legitimate child."

■ ■ These authorities, in this respect, accord to the father of a bastard child the same rights which attach when it is legitimate. They are, as we have seen, by express statutory provisions, superior to those of the guardian. *Mathews* v. *Wade, supra.* In Virginia certainly all of these rights are subordinate to the interest of the child itself. Where that interest demands it, the rights of the father, mother, or guardian, all may be disregarded. The trial court must have had this in mind when he came to give judgment in the instant case, and no error on its part in this respect has been shown.

■ The court did go on to revoke the guardianship of Charlotte Hayes, and to appoint in her place and stead Steve Strauss. Of course, the court always has the power in a proper case to remove one guardian and appoint another, but this cannot be done in *habeas corpus* proceedings (*Mathews* v. *Wade, supra*), and so the order in this case in this particular was erroenous. It is to this extent set aside, and in all other respects is affirmed.

*Modified and affirmed.*