THOMAS, J.,
dissenting:
¶ 37. With all due respect to the majority, I dissent. The majority opinion is based on three crucial errors in child custody law, being:
1. The mother, S.B., and the father, L.W., shared joint custody of their illegitimate child for the first five years of the child’s lifetime;
2. The possibility or occurrence of a parent’s relocation to another city is a factor to be considered in granting child custody; and
3. The sexual preference of the natural mother is a factor to • be considered in granting child custody. These assertions are erroneous. Rather, the following analysis is supported by Mississippi law:
1. The mother of an illegitimate child is the only person with a legal right to custody of the child;
2. The possibility or occurrence of a parents relocation to another city is a factor that not only should not be considered in granting custody, is unconstitutional;
3. The sexual indiscretions or preference of a parent is a factor that should not be considered in granting custody of a child unless it is shown that such was harmful to the child.
¶ 38. The majority relies on the fact that S.B. admitted that both she and L.W. shared joint custody of P.A.W. until P.A.W. was old enough to begin school (five years old), at which time L.W. continued to enjoy liberal visitation rights. However, the majority overlooks the fact that L.W. had absolutely no legal right to custody of the child until he filed a petition for custody, eight years after the child’s birth. Mississippi recognizes the old common law rule that “the putative father of an illegitimate child is entitled to the custody of the child as against all but the mother. If the mother be dead, and the father a suitable person, it shall be taken from the maternal grandparents and delivered to him.” Aycock v. Hampton, 84 Miss. 204, 36 So. 245, 245-6 (1904) (citing Commonwealth v. Anderson, 1 Ashm. 55 (1831)). See also Smith v. Watson, 425 So.2d 1030, 1032-3 (Miss.1983); Pearson v. Clark, 382 So.2d 482, 483-4 (Miss.1980); Illinois Cent. R. Co. v. Sanders, 104 Miss. 257, 61 So. 309, 310 (1913); Hibbette v. Baines, 78 Miss. 695, 29 So. 80 (1900); American Digest (Century Edition) vol. 6, p. 1835, § 19. The mother had sole legal right to the child regardless of any mutually agreeable visitation rights that the father enjoyed. It was purely gratuitous of S.B., the mother, to grant such visits to L.W., rather than by legal right. There *665 fore, regardless of her factual admission during trial that L.W. and S.B. shared custody of the child, legally such did not exist until paternity was established in the trial proceedings at hand.
¶ 39. It should be noted that but for S.B.’s agreement to the stipulation that L.W. was the natural father of P.A.W., LW.’s petition for determination of paternity, and, thus, LW.’s petition for an award of custody and child support would be procedurally barred due to the fact that the statute of limitation (three years) had passed several years before. Johnson v. Ladner, 563 So.2d 1368, 1369 (Miss.1990). However, S.B. did not raise this issue at trial.
¶ 40. It should also be noted that while L.W. voluntarily supported the child and had liberal visitation rights up to the point of the chancellor’s decision, the natural father of an illegitimate child is, in any event, required by law to support his child. Miss.Code Ann. § 93-9-7; § 93-9-9(1); § 97-5-3.
¶ 41. Law v. Page, 618 So.2d 96, 101-2 (Miss.1993), was the focal authority cited by the chancellor in the decision granting L.W. custody of P.A.W. The chancellor correctly cited Law v. Page as authority in applying the Albright analysis to decide a custody dispute between the parents of an illegitimate child rather than applying factors as if this were a modification of custody proceeding. However, the chancellor overlooked the portion of the decision where the Mississippi Supreme Court considered how long the child had been living with the father.
¶ 42. In Law v. Page, the custody dispute began when the infant child was younger than a year old. The mother was found to be unfit and the father was granted custody. By the time the Mississippi Supreme Court affirmed, the child had been in the father’s custody for more than three years. The Mississippi Supreme Court stated in their opinion that it was in the child’s best interest to remain in Page’s custody due to the fact that Page had cared for the child for the last three years of his life, the child had become a stable member of the father’s family.
¶ 43. Quite to the contrary, in the case at hand, the chancellor gave no weight to the fact that the child had been living with S.B. for the last eight years. It seems that the chancellor ignored the essential factor of time and the stability of P.A.W.’s familial relationship in this case. Rather, the chancellor focused on, and gave great weight to, the facts that S.B. was planning to relocate and that she was a lesbian. We quote the chancellor’s record extensively:
We’ve got a case in Mississippi Al-bright v. Albright. I know the lawyers are well familiar with it. You’ve got your Albright factors. I’ve got it here before me with a checklist.
The age of the child is of concern. [P.A.W.] is a eight-year-old, this next April will be nine. In just a few more years she will be a teenager. She’s a young lady. She’s not what you would call a babe in arms now, to me she is still a child. I don’t think that either parent would have an upper hand because of the age of the child, so I’ve given both parents a check mark.
The sex of the child. I’ve given both parents a check mark there. When I started practicing law, 30 some odd years ago, the sex of the child was the very basis for determining custody. Now, then, that is a very minor part of custody, unless it’s just an absolute effort.
And, then, you’ve got the continuity of care prior to separation. Here both parents, until the child started school, shared equally in that. And I would *666 gauge them both about equal on that, other than the mother has had more care since the child has started school, because the child has spent more time with her. But the father has also spent a lot of time with her.
The best parenting skills. I think both of them are pretty good parents. I think that the only drawback, I think [S.B.] has some emotional problems. I think she needs to get her feet on the ground. She’s quit her job in hopes of opening a business, rather than continuing with a job until she knows that she is going to open a business is a very immature decision as far as the Court is concerned. When I questioned her about that she said that she had enough money coming in now to make the automobile payments and payments. When I questioned her as to who would support the child she said she would and [R.A.]. She’s not [R.A.]’s child. It’s not her duty to support this child. I would give both parents a check mark there.
Employment factors. This will go to [L.W.]. He’s stable in his employment. He and his wife have a combined income of over $100,000 a year. He’s been at this job for a long time. [S.B.] has quit her job. She’s got two part-time jobs, so I would give that check to [L.W.].
The age of the parents. They are in 30’s-40’s, late 30’s, I give both parents there a check mark.
The health of the child. The physical health of the child and physical health of the parent, I give a check mark to both of them there.
Mental health of the parent. I think [L.W.] would get a check mark there. I think he appears to be the more stable of the two.
Emotional ties between the parent and child. I think it’s even in this case.
The moral fitness of the parent. I would have to give that check to [L.W.]. [S.B.] has had two lovers since this child has been born. She’s had Chris and she’s had [R.A.]. Tomorrow she could possibly have somebody else. The relationship that she is in in today’s society is being more accepted but it’s still not the norm. So I give that check mark to the father, [L.W.].
Stability of the home environment. It would have to go to [L.W.] because he is in a heterosexual environment. Has a home there that is an average American home. It’s stable. The stability in the home [S.B.] is in is not that stable.
Those are not the only criteria that this Court has got to look at in a situation like this. There’s other criteria that I think is of great importance in deciding the serious question of custody. One is the parties present and future financial condition. It appears that the [L.W.]’s have a stable financial condition. They are healthy. [S.B.] and her partner are considering on opening a new business venture in Gulfport, Mississippi, which could be successful or could be a disaster. So their future financial condition is unknown.
The general and specific environment in which the children or child would be reared. To place the child with [S.B.], the child would be reared in a lesbian home, which is not the common home of today. To place a child with [L.W.], the child would be reared in a home which is considered more common today. She would be in a home of a mother, father, stepbrothers and sisters, which this Court-the testimony before the Court today is a very stable home, and it’s a very loving home.
And you’ve got to consider the character of the public schools. The schools and churches that they attend. I don’t *667 know anything about the Gulfport school system, I’m sure that it’s a good school system, none of this was brought out by any of the testimony today. But it’s common knowledge about the school systems in Lafayette County, Mississippi-their rating. Oxford is rated five and Lafayette has always rated four. Five is as high as you can be, fourth is next. We are fortunate in this locate that we have such excellent school systems.
General environment and conditions of the neighborhood in which the child will reside. If the child resides with either parent here in Lafayette County, Mississippi, from the testimony before the Court, it will be residing in the rural part of the county. One on the eastern part and one that lives on the western part. If [S.B.] and them go ahead with their plan to move to Gulfport, Mississippi, I don’t know what type of neighborhood that they will be residing in.
The health and attitude of the persons who own the home in which the child is to live. In this situation the [W.]’s, that would be Mr. and Mrs. [L.W.] own the home. In the other situation [S.B.], it would be [R.A.] owning the home. Mr. and Mrs. [L.W.] are married and [R.A.] and [S.B.] have a lesbian relationship.
This Court has got to do what this Court thinks is right for the best interests of this child now and in the future. Based upon the evidence that’s before the Court, and the law as it now stands in the state of Mississippi, I feel that the best interest of the child would be to place her with her father, [L.W.], and I so order.
¶ 44. The Mississippi Supreme Court has held “that our courts may not require that children be reared in a single community.” Bell v. Bell, 572 So.2d 841, 847 (Miss.1990). See also Ayers v. Ayers, 734 So.2d 213, 217 (Miss.Ct.App.1999). It has been specifically explained that in a divorce proceeding, a chancellor cannot decree that a child remain in a certain community. Bell, 572 So.2d at 847; Ayers, 734 So.2d at 217. Our supreme court has further held that the fact that “a parent moves is certainly not per se a material change of circumstances” warranting modification of custody. Spain v. Holland, 483 So.2d 318, 320 (Miss.1986). See also Stevison v. Woods, 560 So.2d 176 (Miss.1990); Pearson v. Pearson, 458 So.2d 711 (Miss.1984). The Mississippi Supreme Court has also appropriately noted that the right to relocate is incorporated in the fundamental right to travel, which is protected by the United States Constitution. See Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 902-03, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986); Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982); Edwards v. California, 314 U.S. 160, 183, 62 S.Ct. 164, 86 L.Ed. 119 (1941).
¶ 45. Further, our supreme court stated that:
We regard it presumptuous for anyone, court or otherwise, to declare as an absolute that it is in the best interest of a young boy or girl that he or she spend his or her entire minority in a single community. We regard it particular folly to decree in advance — at a time when one child may be twelve and another six — that it will be in their best interest to remain in a given community until they become adults. This is simply something that no individual and certainly no court can know.
Bell, 572 So.2d at 847. Therefore, the fact that a parent will or may relocate to another community should not be considered in a custody dispute absent a finding of adverse impact on the child.
¶46. Our appellate courts have firmly established that an application of the Al- *668 bright analysis cannot be based upon sexual relations of the unmarried custodial parent, absent a finding of some conduct harmful in a more specific sense than the certain knowledge of such a relationship. Sullivan v. Stringer, 736 So.2d 514, 517-8 (Miss.Ct.App.1999); McAdory v. McAdory, 608 So.2d 695, 702 (Miss.1992); Carr v. Carr, 480 So.2d 1120, 1121 (Miss.1985); Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983); Cheek v. Ricker, 431 So.2d 1139, 1144-5 (Miss.1983), Yates v. Yates, 284 So.2d 46, 48 (Miss.1973); Anderson v. Watkins, 208 So.2d 573, 574 (Miss.1968); Rushing, 724 So.2d at 916; Moak v. Moak, 631 So.2d 196, 198 (Miss.1994). See also Amis, Divorce and Separation in Mississippi’s 214 (1935), and 24 Am.Jur.2d Divorce and Separation § 788 (1966). It must be proven that such conduct adversely affected the child. Forsythe v. Akers, 768 So.2d 943, 947 (Miss.Ct.App.2000).
¶ 47. The crucial Albright decision itself established that just as marital fault, relative financial situations, differences in religion, personal lifestyles and personal values should not be used as sanctions or be the sole basis for an initial custody decision, such factors should not be the sole cause of a modification of custody order. Albright, 437 So.2d at 1005. See also Rushing, 724 So.2d at 916 (citing Moak, 631 So.2d at 198). Nor should a parent be punished for their personal lifestyles or sexual behavior. Smith v. Jones, 654 So.2d 480, 487 (Miss.1995)(quoting Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984)); Moak, 631 So.2d at 200; Crowson v. Moseley, 480 So.2d 1150, 1152 (Miss.1985). Yet, the chancellor below repeatedly alludes to the fact that S.W. is a lesbian.
¶48. As to the assertion that S.B.’s lesbian lifestyle provides an immoral and unfit home for a child, it is the modern trend across the United States of America to reject legal rules that deny homosexual parents the fundamental constitutional right to parent a child. See S.N.E. v. R.L.B., 699 P.2d 875 (Alaska 1985); In re Marriage of Birdsall, 197 Cal.App.3d 1024, 1028, 243 Cal.Rptr. 287, 289 (1988); Nadler v. Superior Court, 255 Cal.App.2d 523, 525, 63 Cal.Rptr. 352, 354 (1967); D.H. v. J.H., 418 N.E.2d 286, 293 (Ind.Ct.App.1981); Doe v. Doe, 16 Mass.App.Ct. 499, 503, 452 N.E.2d 293, 296 (1983); In re J.S. & C., 129 N.J.Super. 486, 489, 324 A.2d 90, 92 (Ch.Div.1974), aff'd, 142 N.J.Super. 499, 362 A.2d 54 (1976); Guinan v. Guinan, 102 A.D.2d 963, 964, 477 N.Y.S.2d 830, 831 (1984); Conkel v. Conkel, 31 Ohio App.3d 169, 509 N.E.2d 983, 985 (1987); see also In re Adoption of Charles B., 50 Ohio St.3d 88, 552 N.E.2d 884, 888 (1990) (homosexuality of father not per se grounds for denial of adoption); A. v. A., 15 Or. App. 353, 514 P.2d 358, 360 (1973); Constant A. v. Paul C.A., 344 Pa.Super. 49, 496 A.2d 1, 9 (1985); Stroman v. Williams, 291 S.C. 376, 379-80, 353 S.E.2d 704, 705-06 (Ct.App.1987); Kallas v. Kallas, 614 P.2d 641, 645 (Utah 1980); Medeiros v. Medeiros, 8 Fam.L.Rep. (BNA) 2372 (Vt.Super.Ct.1982); In re Marriage of Cabalquinto, 100 Wash.2d 325, 329, 669 P.2d 886, 888 (1983); Rowsey v. Rowsey, 174 W.Va. 692, 329 S.E.2d 57, 60-61 (1985); see also In re Jacinta M., 107 N.M. 769, 764 P.2d 1327 (Ct.App.1988) (dictum) (stating that the homosexuality of the child’s brother was not sufficient alone to deny him custody); M.A.B. v. R.B., 134 Misc.2d 317, 510 N.Y.S.2d 960 (1986) (discussion of unsubstantiated societal biases associated with custody actions wherein homosexuals are parties, as well as the possible beneficial aspects of granting such custody in certain instances).
¶ 49. Although our supreme court has not specifically addressed the issue of granting a lesbian custody in initial custody proceedings or modification proceed *669 ings, its pronouncements regarding heterosexual relations of unmarried parents coupled with the wealth of authority from other jurisdictions leads me to the inescapable conclusion that the issue has no bearing absent a conclusion that such has or will have an adverse impact on the child.
¶ 50. Because the chancellor considered two factors, sexual preference and change of residence, without addressing any adverse impact upon the child and, likewise, did not factor in the length of time the child had been in the custody of its mother, this case should be reversed and remanded for reconsideration.
1151. The chancellor, of course, should be free to receive any other evidence he wishes on remand, particularly given the time span since this matter was first heard.
KING, P.J., joins this separate written opinion.