[S. F. No. 8556.  In Bank.—December 23, 1918.]

In the Matter of the Guardianship of the Person and Estate of KENNETH DARE WISE, a Minor.  WINIFRED C. WISE, Appellant; PEARL MAKINNEY, Respondent.

GUARDIANSHIP OF MINOR—PREFERENTIAL RIGHT OF PARENT.—Under the provisions of section 1751 of the Code of Civil Procedure, the father or mother of a minor child under the age of fourteen years, if found by the court competent to discharge the duties of guardianship, is entitled to be appointed guardian in preference to any other person, and the court must appoint a parent seeking to be appointed, unless it finds such parent incompetent, notwithstanding the judge is of the opinion that the child's health and welfare may be promoted by giving it to another.

ID.—ABANDONMENT OF MINOR BY MOTHER—INCOMPETENCY—EVIDENCE—FINDINGS UNSUPPORTED.—Upon this appeal by the mother of a minor of the age of nine years from an order denying her petition for guardianship of his person and estate, it is held the evidence utterly fails to sustain the finding of abandonment and to prove the incompetency of the appellant.

ID.—APPOINTMENT OF FATHER OR MOTHER OF MINOR—CONSTRUCTION OF CODE PROVISIONS.—While section 1747 of the Code of Civil Procedure vests in the court a wide discretion in determining what may be necessary or convenient for the child and its interests, such fact does not free the court from the force of section 1751, which provides that the father or mother of a minor under fourteen years, if found competent to discharge the duties of guardianship, is entitled to be appointed in preference to any other person.

ID.—REFUSAL TO APPOINT GUARDIAN—RIGHT OF MOTHER.—A court may not by merely refusing letters of guardianship to anyone deprive the mother of the right to the society of her child and the direction of his life during minority, which is recognized as a natural privilege and is secured by a solemn enactment.

APPEAL from an order of the Superior Court of Santa Cruz County denying a petition for guardianship.  Benjamin K. Knight, Judge.  Reversed.

The facts are stated in the opinion of the court.

J. Samuels, Oscar Samuels, and W. P. Netherton, for Appellant

William T. Jeter and Charles B. Younger, for Respondent.

MELVIN, J.—This is an appeal by the mother of Kenneth Dare Wise from so much of an order of the superior court of Santa Cruz County as denies her petition for guardianship of the person and estate of said minor.

On September 27, 1916, Pearl Makinney, a grand-aunt of the said minor, petitioned for letters of guardianship of his person and estate. In said petition it was alleged that the boy, then about nine years of age, had been left by his grandfather, Dr. Kenneth Dare Wise, a legacy of the value of about ten thousand dollars, in trust, the income of which, and the principal if necessary, should be used for the child's educational and other requirements. On the 16th of November, 1916, the mother of the minor filed her petition asking for letters of guardianship. Both petitions were heard together, and the court denied both on the ground that there was no necessity for the appointment of a guardian, and ordered that the boy remain with his great-grandmother. An additional ground for the denial of the mother's petition, as found by the court, was that by abandoning the infant she had forfeited her right to the custody and control of her child and his fortune.

Appellant contends that she is a competent person, entitled by absolute right to appointment as the child's guardian, and that the evidence does not support the finding that she had abandoned her boy.

The child had been in the custody and care of his great-grandmother and his grand-aunt, in their home in Santa Cruz, ever since he was a baby about one year old. For the first three years of the period during which he lived there, the father and mother had resided most of the time in San Francisco. The habits and condition of health of the father (who was suffering from tuberculosis) were such that the home of the boy's parents was not so suitable for him as that of Mrs. Makinney, his great-grandmother. The father and mother were divorced after three years of separation from their child, and afterward the mother worked for a living in San Francisco. She was on friendly terms with the relatives in Santa Cruz and visited her child as often as twice a year and corresponded with Mrs. Makinney from time to time regarding him. It appears that the child was intrusted by Mrs. Wise to Mrs. Makinney at the latter's suggestion and because

both wished to avoid the danger of infection from tuber-
culosis. There was no understanding regarding the length
of time the boy was to remain in the Makinney household,
and no promise by the mother to surrender her rights. Dur-
ing the exposition of 1915, the lad went to San Francisco
and remained with his mother for a week or ten days. There
had been other visits also. It was shown that there was no
understanding that the mother was to contribute regularly to
the support of her son. At one time, upon request, she paid
$30 of a doctor's bill of $50, and $7.50 for his care in a hos-
pital. There was other testimony which need not be re-
viewed in detail regarding the mother's contribution to the
child's welfare. Such, for example, was the statement of
Mrs. Makinney that the mother had sent the lad certain suits
of clothing. A study of the record convinces us that the
great-grandmother expected and demanded very little from
the child's mother. As she said, the keeping of the boy at
her home was a matter of affection and love on her part rather
than any other cause. This is one of those cases which we
are sometimes called upon to decide, in which the affection of
cherishing friends or kinsfolk is at war with the natural right
of a parent. In such cases we are impelled by the force of
our statutes as interpreted by the decisions of this court to
regard the paramount right of the parent, unless such right
has been forfeited by abandonment of the minor or by other
conduct making the parent unfit to discharge the duties of
guardianship. As our present chief justice (then an associate
justice) said, in the *Matter of Guardianship of Mathews,*
169 Cal. 26, 27, [145 Pac. 503] : ''It is well settled that,
under the provisions of section 1751 of the Code of Civil Pro-
cedure, the father or mother of a minor child under the age
of fourteen years, if found by the court competent to dis-
charge the duties of guardianship, is entitled to be appointed
guardian in preference to any other person, and that the
court must appoint a parent seeking to be appointed, unless
it finds such parent incompetent, notwithstanding the judge
is of the opinion that the child's health and welfare may be
promoted by giving it to another. (*In re Forrester,* 162 Cal.
493, [123 Pac. 283] ; *In re Salter,* 142 Cal. 412, 415, [76 Pac.
51].)'' We are of the opinion that the evidence in this case
utterly fails to sustain the court's finding of abandonment,
and that it does not prove appellant to be incompetent to dis-

charge the duties of guardianship. In many respects this case resembles the Mathews matter. Upon the second appeal in that proceeding, Mr. Justice Henshaw, delivering the opinion of Department Two, and discussing the emphatic terms of section 1751 of the Code of Civil Procedure, and their dominance over those of section 246, subdivision 1, of the Civil Code, used the following language, which in its essentials is most pertinent to the solution of the problem now before us:

"It is argued with great force that the trend of modern decisions is to regard as of primary importance the welfare of the minor himself. This is most true. The decisions to this effect are made either under the permission of the law, which contains no such restriction as that found in our section 1751, or else are given under the command of the law which, in effect, declares that over and above all else the controlling consideration shall be the welfare of the child. If we were thus at liberty to act, it might well be that the custody of this child, under the findings of the court, would be given to the Rouses. This is the injunction declared in our own law by subdivision 1 of section 246 of the Civil Code. But, as we have pointed out, unless the parent has for some reason (and no such reason is here found) forfeited his preferential right to the guardianship of his offspring, all considerations of the welfare of the child must, under our law, be regarded as subordinate to that right." (*In re Mathews*, 174 Cal. 679–683, [164 Pac. 8, 9].)

We must next consider the finding of the superior court that there was no necessity for the appointment of a guardian for the person or the estate of the minor. This finding was made under the supposed sanction of section 1747 of the Code of Civil Procedure, and was based upon the two circumstances that the child was in a suitable and comfortable home, and that under the terms of the will of Dr. Wise, the minor's inheritance would be managed, not by a guardian, but by a trustee acting under authority of the probate court of Los Angeles County, wherein the will had been admitted to probate. The section in question is, so far as pertinent to this proceeding, as follows: "The superior court of each county, when it appears necessary or convenient, may appoint guardians for the persons and estates, or either of them, of minors who have no guardian legally appointed by will or deed, and

who are inhabitants or residents of the county, or who reside without the state and have estate within the county.''

It is argued with much force in opposition to appellant's claim of right to letters of guardianship, that this section vests in the court a wide discretion in determining what may be *necessary* or *convenient* for the child and its interests. This may be freely conceded, but that concession does not free us from the force of section 1751 of the Code of Civil Procedure, which provides that ''The father or the mother of a minor child under the age of fourteen years, if found by the court competent to discharge the duties of guardianship, is entitled to be appointed a guardian of such minor child, in preference to any other person.'' That the minor child, who was the object of the affection of the hostile petitioners herein, needs the care and guidance of some adult person may not be denied. The court, by refusing to appoint either petitioner, virtually bestowed the infant upon the great-grandmother, who was not asking for letters, thus depriving the mother of a preferential right secured to her by statute. This may not be done under such circumstances as are revealed by the record before us. To allow such an order to stand would be to substitute the discretion of the court for the compulsion of the statute, which gives preference to a qualified parent. It may be, and doubtless is, true that the fund left by Dr. Wise for the care and education of the child may be administered by the trustee without the aid of a guardian. And there can be no doubt that in the home of the great-grandmother the boy would be surrounded in the future, as he has been in the past, by refining influence and by all things which would contribute to his moral and physical welfare. But the court may not, by merely refusing letters to anyone, deprive the mother of a right to the society of her child and the direction of his life during his minority, which is recognized as a natural privilege and is secured to her by solemn enactment. Upon the facts proved the child needed a guardian and the mother was entitled to the appointment. It is suggested by counsel opposed to appellant that such an interpretation of section 1751 as this court has given would have the effect virtually to eliminate the words ''necessary or convenient'' from section 1747. If that were its effect there would be nothing novel in the dominance of section 1751, for we have seen that it was held in the second of

the appeals in the Matter of Mathews that the preferential parental right bestowed and declared by section 1751, unless forfeited by abandonment or some other disqualification, overcomes and controls the discretion which the court might otherwise enjoy under the terms of section 246 of the Civil Code. But we do not agree with counsel in their opinion that the quoted words in section 1747 of the Code of Civil Procedure are eliminated by our interpretation of the later section of the same code. It is to be remembered that applicants for guardianship of minors are not always parents or persons related to such children, and numerous illustrations will suggest themselves, without our aid, in which, under reasonably supposable facts, the terms of the earlier section would apply with all force, and those of the later would have no relevancy whatever. But in the present proceeding we are bound to give the effect to section 1751 sanctioned by the authorities above cited, and others to which reference might be made, and we are compelled to hold that the finding of lack of necessity for the appointment of a guardian is not supported and justified by the evidence.

The action of the learned judge of the superior court, as shown by his very able written opinion, was based largely upon the authority of *In re Gates,* 95 Cal. 461, [30 Pac. 596], in which Chief Justice Beatty refused to make an order in a proceeding on *habeas corpus,* enforcing the mere legal right of a mother who had years before surrendered the exclusive control of her child to a relative who had obtained letters of guardianship, which, however, were void for want of jurisdiction in the court awarding them. But that opinion, as all similar ones must do of necessity, left open to the petitioner the right to apply for letters and to test in the proper forum her fitness for the care and control of her minor child. In commenting upon the Gates proceeding and the matter of the *Application of Bell,* 28 Cal. App. 547, [153 Pac. 240], we said, in the opinion in *Ex parte Britt,* 176 Cal. 177, [167 Pac. 863–865]: "These cases are to be carefully distinguished from those in which, after hearings held for the very purpose of determining the fitness or unfitness of a parent, courts have awarded the custody of a child."

In the later proceeding, *Ex parte Mathews,* 176 Cal. 156, [167 Pac. 873], it was held that a mother to whom letters of guardianship had been issued was entitled to recover the

physical custody of her ward by *habeas corpus.* In commenting upon the opinions in the Gates and Bell proceedings, Mr. Justice Sloss, in the opinion in the Mathews matter, used the following language: "If it be sound doctrine that a court or judge may, on *habeas corpus,* disregard an established legal right which would control the judgment in any other form of proceeding, we are, nevertheless, satisfied that the rule can have no just application here."

It will thus be seen that there is no just analogy between the matter at bar and the cited proceeding *In re Gates.*

The order refusing letters of guardianship to Winifred Wise, mother of Kenneth Dare Wise, is reversed.

Sloss, J., Richards, J., *pro tem.,* Wilbur, J., Victor E. Shaw, J., *pro tem.,* Lorigan, J., and Angellotti, C. J., concurred.