Commonwealth ex rel. Harper *v.* Fuller,
Appellant.

Submitted May 8, 1940.

Before CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

Habeas corpus proceeding. Before MARSHALL, J.

*Adam B. Shaffer,* for appellant.

No appearance was made, nor brief filed for appellee.

OPINION BY CUNNINGHAM, J., October 7, 1940:

This habeas corpus proceeding in the court below resulted from a controversy between Earnest Fuller, alias dictus, Harold Lee, the putative father of the

illegitimate female child of Gertrude Withrow, deceased, and Maggie Harper, its maternal aunt, over its custody.

Following a full hearing before MARSHALL, J., an order was made on February 8, 1940, awarding the custody of the infant, Rosalia Withrow, now about two years of age, to the aunt; this appeal by Harold Lee followed.

Our examination of the testimony has led us to an independent conclusion which coincides with the views expressed in the memorandum opinion of the court below, viz., that appellant is not a fit person to have anything to do with the rearing of this child. We accept, as did the court below, the statement of appellant that he is the father of the child and, as its mother is dead, we would, if he were a suitable person, recognize his prima facie superior right to its custody; but in this case, as in every case involving the custody of a child, the paramount and controlling issue is its present and future welfare.

A recital of some of the outstanding facts appearing of record will indicate our reasons for affirming the order appealed from.

In 1937 when Gertrude Withrow was about twenty she came from North Carolina to Pittsburgh where her two married sisters, Maggie Harper and Erie Wilson, lived. While working as a domestic she met appellant, a married man living with his wife. As a result of their intimacy Rosalia was born in a hospital. A few months later Gertrude and her baby were taken into the home of Maggie Harper and her husband, William, 866 Braddock Avenue, Braddock. William Harper has worked at the Homestead Steel Works for seventeen years and now earns approximately $8 each working day. Gertrude Withrow and her baby were supported solely by the Harpers until September 20, 1939. In the meantime appellant continued his relations with Gertrude until a second pregnancy occurred. At his

instance, an illegal operation was performed with fatal results to her. On September 20, 1939, while Gertrude was confined to bed in the Harper home a sister of appellant, Anna Jackson, took Rosalia from the house, without the consent of the Harpers, to her own home and later to the home of appellant, 545 Fifth Avenue, Homestead. This home is an apartment of five rooms in a tenement house where seven people sleep in three bedrooms.

On September 25th Gertrude Withrow was removed to a hospital where she died the following day. Mrs. Wilson, the other aunt, testified she went to appellant's home the night her sister was dying and asked permission to take the baby to the hospital, but was refused. Appellant made no payments on account of the lying-in expenses incident to the birth of his child or on account of doctor bills and funeral expenses incurred through the illness and death of its mother. He also is a steel worker, thirty-five years of age, but seems to have worked quite irregularly. His excuse for using the alias, Earnest Fuller, was that he could not get a job under his right name. No further explanation was given.

There is some contradiction in the testimony concerning the attitude of appellant's wife toward his illegitimate child, but she asserts she wants Rosalia in her home and quit her work as a domestic in order to take care of the baby.

All of the parties belong to the colored race and neither the Harper home nor that of appellant is an ideal place for the rearing of this child, but we are satisfied, particularly by the testimony of Mrs. Sidney Brown, who for more than ten years has been "a case worker for all of the negro cases at the Children's Aid Society of the Community Fund," that the Harper home is the better, at least until some institutional home can be found.

The Harpers live in a house with five rooms; they have one daughter and a grandchild living with them. William Harper is a steady worker, earns good wages, is able to provide for the child and is desirous of having her as a member of his family.

Mrs. Brown testified she became "interested with Gertrude's problem," prior to the birth of the child and unsuccessfully tried to arrange with appellant for some support for her. The witness visited both homes and described the rooms in the Harper house as airy and larger than most of those she saw in Braddock. She also frankly stated she thought "under supervision [of the Children's Agency] the child would be safe in either home." Mrs. Brown added the "baby has the appearance of being well cared for," and that Mrs. Harper "has given her consent to the supervision in the event that the baby is brought there."

Our conclusion from an examination of the entire record is that the highest interests and ultimate welfare of the child will be best served by affirming the order of February 8, 1940.

Order affirmed at costs of appellant.