In this habeas corpus proceeding petitioner seeks the custody of her illegitimate child, a girl born in April, 1939. The child has been in the possession of respondents ever since about ten days after its birth. As against third persons, the mother, even if the child be illegitimate, has a right to its custody unless she has forfeited that right by surrender or abandonment or unless she is an unfit person to exercise control. In the instant proceeding the putative father is not concerned since he has neither appeared nor made any claim. In Hesselman v. Haas,71 N.J. Eq. 689 (at p. 694), the court lays down the rule as follows: "Although there is some discussion as to whether, as between the putative father and the mother of an illegitimate child, the latter has a superior right to its custody (Schoul.Dom. Rel. (5th ed.) 278 et seq.) it is entirely settled that, as against any other than the putative father, the mother of such a child has the natural right to its custody. Reg. v.Nash, 10 Q.B.D. 454; 13 Eng. Rul. Cas. 26, in the note to which the English and American cases are given; Friesner v. Symonds,46 N.J. Eq. (1 Dick.) 521 (at p. 527) (Vice-Chancellor Van Fleet, 1890.)" *Page 405 
It is the contention of the respondents that not only did petitioner abandon her child but that she is an unfit person to have its custody. They assert that the facts bring this proceeding within the rule laid down in Richards v. Collins,45 N.J. Eq. 283, that "The strict legal right of parents to the custody of their children will not prevail, if it imperils the personal safety, morals, health or happiness of the children, and the court will scrutinize the character, condition, habits and other surroundings of the claimants, as well as consider the preferences of the children, if competent, in determining what will best serve their welfare."
However, the respondents in my opinion have not established sufficient facts to bring this case within the exception. As to the alleged abandonment, the facts and circumstances lead to the conclusion that petitioner never intended giving up her child but in fact intended to reclaim it as soon as she could properly provide for it. The circumstances of the birth were such that she evidently was not only in a desperate financial situation but also mentally distraught. She was employed as a nurse in a hospital in Brooklyn, but she had to leave on account of her condition. Her parents who were at least partially dependent upon her for support were in Maine. She wished to conceal the fact of her pregnancy from them. Under the circumstances the only place she could turn to for help was the putative father, who through a friend provided a doctor for her confinement in a hospital in Yonkers. Prior to that time she was for a while in a Catholic Maternity Charity in Brooklyn which she left because she did not like the conditions there. Even before the birth of the child, the doctor who attended her had made arrangements for the child to be taken by the present respondents and the child was turned over to them about ten days after the birth, and on the same day on which the petitioner left the hospital. The petitioner went to join her family in Maine and secured work in a hospital there. She states that she never had any intention of giving up the child and was only forced to leave it because of her circumstances.
Some time later the respondents engaged a New York lawyer to bring about a formal adoption by the respondents. *Page 406 
The lawyer prepared papers including a form of consent to the adoption and renunciation by the mother, and forwarded it to her for her signature. Although she seems to have hesitated somewhat about signing she did finally take the definite step of refusal. She did not know where the child was and herself engaged a lawyer to ascertain its whereabouts and seek to gain its custody. After considerable difficulty, the child was traced to the possession of the respondents in Hudson County, New Jersey, and these proceedings were instituted. Under the circumstances, I cannot find that a claim of abandonment has been sustained. In the case of Hesselman v. Haas the court pointed out that where the parent was in ignorance of the whereabouts of the child, mere lapse of time did not constitute an abandonment.
As to the alleged unfitness of the petitioner, the only charges brought against her were the facts that she had previously given birth to another illegitimate child and that a third child was born to her about a year ago and a month after her marriage. As against this, it was brought out that she is living with her husband and the other two children in Connecticut and that her mother and father in whose care her first child has been is also living with them. Her husband who appeared at the hearing testified that he was aware of the circumstances of the birth of her children, was able and willing to provide for the child in controversy here, and in fact intended to apply for adoption of the children in case of a termination in favor of the petitioner. Mere sexual irregularity is not sufficient to deprive a mother of her children, as was determined in the case of Hesselman v.Haas, supra. While the respondents appeared to be in better financial circumstances than the petitioner this in itself, of course, will not weigh very heavily as a factor.
Since respondents have not sufficiently shown that this case comes within the exception to the rule that the natural parent is entitled to custody, custody will be awarded to the petitioner. *Page 407