## JACKSON *v.* LUCKIE.

No. 16552. MARCH 16, 1949.

*Ralph R. Quillian,* for plaintiff.
*Swift Tyler,* for defendant.

WYATT, Justice. It would serve no useful purpose to state the voluminous evidence adduced on the trial of this case. On the material issues the evidence was conflicting. Briefly, it appears that the child in question is the illegitimate daughter of the plaintiff, born during the time the plaintiff and the defendant were cohabiting for a period of about four years. After the birth of the child, and after it was several months old, the child was taken to the home of the paternal grandmother. The evidence was conflicting as to whether the defendant alone, or the defendant in company with the plaintiff, took the child to the grandmother's home. The defendant testified that the child was temporarily left by both parents with the grandmother while the parents went on a trip to Birmingham, Alabama. The grandmother testified that the mother of the child came to her home with the child and the following occurred: "She set her down on the living room settee and she said, 'Margie, I have brought you Patty.' She says, 'You can have her.' I say, 'Have her?' She says, 'Yeah; I just tell you the truth, I don't want to be bothered with the child no more.' I says, 'Well, Thelma, you will come back out here and want to take this child away from me after I work and get to love her.' She says, 'No, I won't.' I says, 'Well, I couldn't take this child with all these places that I have and running around like I have to do.' I says, 'I won't take the child unless I knew you wasn't going to bother me because I would have to sell some of these places.' I am referring to my rooming house. She says, 'You can go ahead

and sell them, you can depend on me because I am not going to bother you.' I says, 'Well, Thelma, you know these places bring me good money. I wouldn't want to sell them and then you come along and take this baby away from me.' She says, 'You can depend on it, I will not do it.' "

Several months after the child was left at the home of the paternal grandmother, the plaintiff and the defendant ceased their illicit relationship. Thereafter, and for a period of approximately three years, the defendant has been seeking to regain custody of her child.

The evidence was conflicting as to the mother's character and fitness to rear the child. There was evidence to the effect that the mother had been arrested twice, but it further appeared from the evidence that on both occasions she was arrested along with the father of the child, and after the father while drunk had caused a disturbance. One witness, a former landlady of the mother, also testified that in 1947, after the mother of the child had obtained a divorce from her first husband and remarried, she saw the defendant drunk on two occasions; that the landlady had had complaints about the defendant and her present husband, though the nature of the complaints did not appear, and she had evicted them from the rooms they were renting from her. But the defendant testified that the eviction proceedings were instituted because the landlady refused to repay $200 the defendant had lent her, and because the defendant had made a complaint to the OPA, and the landlady was required to refund $75 in overcharges for rent. The refund of the overcharge was admitted by the landlady.

The evidence as to the mother's intoxication, which she denied, related to incidents occurring long prior to the hearing. With respect to prior conduct, the husband of the paternal grandmother admitted his excessive use of alcohol, testifying: "I used to drink but I don't any more. It's been about I reckon nearly a year since I quit drinking. I have drunk lots of it, see, but I don't fool with it any more whatever. You ask if I didn't use to drink kind of heavy. Well, I used to have the money to buy it with if I wanted to buy it."

The undisputed evidence showed that, after the mother and

father of the child ceased their illicit relationship, the mother obtained a divorce from her first husband in 1947 and remarried; that she and her present husband are renting a house, maintaining an apartment therein, and that her present husband is regularly employed by the Government, and has an income of approximately $450 per month. There was no attack upon the character of her present husband. Evidence was offered as to the good environment of the home presently maintained by the mother.

By the Code, § 74-203, it is declared: "The mother of an illegitimate child shall be entitled to the possession of the child, unless the father shall legitimate him as before provided. Being the only recognized parent, she may exercise all the paternal power." Since there is no exception by the defendant in error to the judgment awarding custody of the child to the paternal grandmother, it is unnecessary to determine whether the evidence in this case was sufficient to authorize a finding that the mother of the illegitimate child involved had lost her prima facie right of custody by voluntary contract, surrendering the custody to the paternal grandmother (but see, in this connection, *Waldrup* v. *Crane*, 203 *Ga.* 388 (2), 46 S. E. 2d, 919). Conceding that the mother had lost such prima facie right of custody by voluntary contract or a previous order of the court unexcepted to, the evidence did not demand a finding that the mother was a person of unfit character; nor did it demand a finding that the home presently maintained by the mother was one of unsuitable environment for visitations by.the child; nor did it demand a finding that the welfare and happiness of the child could best be served by prohibiting reasonable visitations to the mother's home. On the contrary, the evidence clearly shows that the home presently maintained by the mother is one of good environment, and that her present husband is a man of good character and able and willing to provide for the child.

For three years this mother has sought the custody of her child. She has failed to acquire such custody; and although on several occasions she has been granted visitation rights by the court, she has been hampered in the enjoyment of these rights by the refusal of the plaintiff and his mother to obey the orders of the court. In the circumstances disclosed by the record, the

trial judge did not abuse his discretion, after awarding custody to the paternal grandmother, in providing that the mother should have the right to have the child visit in her home at reasonable times and for reasonable periods.

*Judgment affirmed. All the Justices concur.*