[L. A. No. 22209.  In Bank.  Jan. 13, 1954.]

Guardianship of the Person and Estate of LELAND SMITH et al., Minors.  FRIEDA HOWES, as Guardian etc., Respondent, v. HARRY COHEN, Appellant.

Hahn, Ross & Saunders and Saul Ross for Appellant.

Clore Warne and Maxwell E. Greenberg, as Amici Curiae on behalf of Appellant.

Juaneita M. Veron for Respondent.

Oswald G. Ingold as Amicus Curiae on behalf of Respondent.

CARTER, J.—■ Frieda Howes petitioned to be appointed the guardian of the persons of Leland Smith, a minor of 8, and Sharon Smith, a minor of 6, brother and sister. She alleged that she is the sister of the minors; their mother is dead; their father is Harry Cohen and all reside in Los Angeles, California; that the minors are now under her care and she has supplied and cared for them since the death of their mother; their "natural" father, Cohen, has "remarried" and has a family of the second marriage; that the only relatives of the minors are their father, petitioner, and a brother,

Paul Smith, who lives with petitioner; that they have no estate. Cohen filed objections to the appointment and requested that he be appointed guardian stating that he is the "natural" father of the minors, they being the illegitimate children of Cohen and Marguerite Smith, deceased, their mother.

The court found all of the allegations of both Frieda and Cohen are true; that both Frieda and Cohen are "fit and proper" persons to be the guardians of the minors and have their custody and control; and that it is "to the best interest and welfare" of the minors that Frieda be appointed guardian. It was so ordered and Cohen appeals. He asserts that being the father of the children, although they are illegitimate, he has preference in the selection of their guardian, he being a fit and proper person.

It is settled in this state that in either guardianship proceedings or custody proceedings in a divorce action, the parents of a legitimate child have preference over a nonparent and the custody shall not be given to a nonparent unless the parent is found unfit. "Where a parent applying for custody is in a position to take the child and is not shown to be unfit, the court may not award custody to strangers merely because it feels that they may be more fit or that they may be more able to provide financial, educational, social, or other benefits. . . . [Citing cases.] '[T]he discretionary power of a trial court necessarily is limited by those provisions of the code wherein the express policy of the Legislature regarding general questions of custody are set forth (Civ. Code, §§ 138, 197; Prob. Code, §§ 1407-1408) and by the judicial interpretation of those code provisions in relation to the specific questions presented by the instant case.' (*Robertson* v. *Robertson,* 72 Cal.App.2d 129, 132 [164 P.2d 52].) Section 1407 of the Probate Code provides that as between persons equally entitled in other respects to the guardianship of a minor preference is to be given first to a parent. This section has been construed to be substantially the same as former section 246(3) of the Civil Code and section 1751 of the Code of Civil Procedure which provided, in substance, that a parent if competent is entitled to custody in preference to any other person. Section 138 of the Civil Code provides that as between parents adversely claiming the custody, neither parent is entitled to it as of right, but other things being equal, if the child is of tender years it should be given to the mother; if it is of an age to require education and preparation for

labor and business, then to the father. The code sections contemplate that the care of a minor child be awarded to a parent, if a fit and proper person, as against a stranger." (*Stewart* v. *Stewart,* 41 Cal.2d 447, 451 [260 P.2d 44].)

Here the parent, Cohen, the father, was found fit rather than unfit and the mother is dead. The only difference in this case is that the minors were not the legitimate issue of Cohen, but that is not significant.

When the mother and father of an illegitimate child are both alive and he has not been legitimated, the mother is entitled to his custody, services and earnings to the exclusion of the father. (Civ. Code, § 200; *In re Gille,* 65 Cal.App. 617 [224 P. 784]; *Strong* v. *Owens,* 91 Cal.App.2d 336 [205 P.2d 48]; 51 A.L.R. 1507.) Both the mother and the father are responsible for his support. (Civ. Code, §§ 196a, 196; *Schumm* v. *Berg,* 37 Cal.2d 174 [231 P.2d 39, 21 A.L.R.2d 1051]; *Reed* v. *Hayward,* 23 Cal.2d 336 [144 P.2d 561].) On the death of the mother the natural father is entitled to the custody of an illegitimate child if he is a fit person. (See *Commonwealth* v. *Fuller,* 142 Pa.Super. 98 [15 A.2d 518]; *Hayes* v. *Strauss,* 151 Va. 136 [144 S.E. 432]; *Aycock* v. *Hampton,* 84 Miss. 204 [36 So. 245, 105 Am.St.Rep. 424, 65 L.R.A. 689]; *Moritz* v. *Garnhart,* 7 Watts (Pa.) 302 [32 Am.Dec. 762]; *People* v. *Meredith,* 272 App.Div. 79 [69 N.Y.S. 2d 462], affmd. 297 N.Y. 692 [77 N.E.2d 8].) It has been held repeatedly that, while the best interests of an illegitimate child are the important factor, the parents of such a child have a superior claim as against the world to his custody if they are fit and proper. (*Armstrong* v. *Price,* (Mo.App.) 292 S.W. 447, mother; *Jensen* v. *Earley,* 63 Utah 604 [228 P. 217], mother; *In re Gille, supra,* 65 Cal.App. 617, mother; *Ex parte Wallace,* 26 N.M. 181 [190 P. 1020], father; *Garrett* v. *Mahaley,* 199 Ala. 606 [75 So. 10], father; *Lewis* v. *Crowell,* 210 Ala. 199 [97 So. 691], father; *People* v. *Meredith, supra,* 69 N.Y.S.2d 462, affmd. 297 N.Y. 692 [77 N.E.2d 8]; *State* v. *Nestaval,* 72 Minn. 415 [75 N.W. 725]; *Jackson* v. *Luckie,* 205 Ga. 100 [52 S.E.2d 588]; *Ex parte Schwartzkopf,* 149 Neb. 460 [31 N.W.2d 294]; *Ex parte Malley,* 131 N.J. 404 [25A.2d 630]; *French* v. *Catholic Community League,* 69 Ohio App. 442 [44 N.E.2d 113]; *Commonwealth ex rel. Human* v. *Hyman,* 164 Pa.Super. 64 [63 A.2d 447]; *Templeton* v. *Walker,* (Tex.Civ.App.) 179 S.W.2d 811; *Henderson* v. *Henderson,* 187 Va. 121 [46 S.E.2d 10]; *Petition of Dickholtz,*

341 Ill.App. 400 [94 N.E.2d 89]; 7 Am.Jur., Bastards, §§ 61-66; 10 C.J.S., Bastards, § 17; 51 A.L.R. 1507.)

There is an additional factor in the instant case. As far as appears the minors have not been legitimated. By awarding their custody to the father they are more likely to be legitimated because "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth." (Civ. Code, § 230.) Unless the father has the right to custody it is not probable that he will receive the minors into his home and thus legitimate them.

This being a judgment roll appeal and the ground of reversal being that the order appealed from is not supported by the findings, the question is presented as to whether there should be a general reversal or a reversal with direction to the trial court to enter an order appointing appellant guardian of the persons of the minors here involved. Section 53 of the Code of Civil Procedure provides in part: "The Supreme Court, and the District Courts of Appeal, may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order, or direct a new trial or further proceedings to be had." A proper construction of the foregoing provision would seem to be that in a case such as this, this court may, in its discretion, order a general reversal which means that the case is set at large and the issues of fact must be retried, or may direct the trial court to enter an order appointing appellant guardian of the minors in the place of respondent in accordance with the views herein expressed. In view of our conclusion that the trial court may desire to give further consideration to the factual matters presented, we deem it appropriate to order a general reversal of the order, thus setting at large all of the issues of fact for a redetermination by the trial court.

The order is reversed.

Shenk, J., and Spence, J., concurred.

TRAYNOR, J.—I concur in the judgment.

The objection to the rule that custody must be awarded to the parent unless he is unfit carries the harsh implication that the interests of the child are subordinated to those of

the parent when the trial court has found that the best interests of the child would be served by giving his custody to another. The heart of the problem, however, is how the best interests of the child are to be served. Is the trial court more sensitive than the parent to what the child's best interests are, better qualified to determine how they are to be served? It would seem inherent in the very concept of a fit parent that such a parent would be at least as responsive as the trial court, and very probably more so, to the best interests of the child. The rule requiring that custody be awarded to such a parent in preference to a stranger does not operate to subordinate the interests of the child to those of the parent; it merely serves to define the area of the parent's responsibility for the welfare of the child. The court's statutory duty to be "guided by what appears to be for the best interests of the child in respect to its temporal and mental and moral welfare" (Prob. Code, § 1406) encompasses the view that the child's welfare is part of the responsibility of a fit parent.

One gains perspective by recalling that families are ordinarily allowed to function without outside interference though their wisdom in the upbringing of children may vary as widely as the physical heritage or economic advantages they give their children. Unless the upbringing of the child is so defective as to call for action by the juvenile court, it is unlikely that an outsider will challenge the parental custody or seek by legal process to prove that the child's welfare would best be served elsewhere. It is generally understood that the stability of established family units would be jeopardized by outside interference.

It is only when the family is dissolved by death, divorce or separation that conflicting claims to custody are likely to arise. If the parents are divorced and no third parties are involved, the court of necessity arbitrates whatever conflicting claims the parents may have to the custody of the children. If one parent dies, however, or upon divorce is unable or unfit to have custody of a child, outsiders may enter the picture and attack the competence of the other parent to have custody or contend that the child would be better off with them. The problem may also arise if the parent awarded custody at the time of divorce dies or for other reasons is no longer able to care for the child, or if one or both parents have through necessity been unable for a time to care for the child

themselves, but thereafter seek to regain custody from outsiders whose assistance they had solicited in the interim.

Ordinarily in any of these circumstances the determination of what course will best serve the interests of the child will involve the consideration of numerous imponderables. All things being equal, it is clear that the parent should have custody. All things are ordinarily not equal, however. The outsider may be able to offer the child greater material advantages. In the case of the death of the parent having custody after divorce, the child may be on more intimate terms with relatives or a new spouse of the deceased parent than with the other parent who has not had custody. If the child has not been in the custody of either parent he may have been successfully integrated into the home of the person who has been caring for him. The parent seeking custody may have remarried so that if custody is awarded to him, the child will be faced with the problem of adjusting to a stepparent. On the other hand, the importance of preserving the relationship between a natural parent and his child cannot be gainsaid. Even in a case where the foster parent treats the child as his own, the child may still suffer from the lack of a natural parent in the eyes of his playmates, or natural children or other relatives of his foster parent may discriminate against him. If he gets into trouble, members of his foster family may be tempted to point out that he is not really one of them. Moreover, even if the child is required to make some sacrifice to be with his natural parent or adjust to a new environment, it does not necessarily follow that his welfare will be correspondingly impaired. It may not be to the best interest of the child to have every advantage. He may derive benefits by subordinating his immediate interests to the development of a new family relationship with his own parent, by giving as well as receiving. Thus, although a change in custody from an outsider to a parent may involve the disruption of a satisfactory status quo, it may lead to a more desirable relationship in the long run.

The facts of the present case aptly illustrate the problem. The two children lived with their mother and half sister until their mother's death. At that time they were 8 and 6 years of age. Their home was disrupted by their mother's death, and both their half sister and their father now seek their custody. The trial court has found that both are fit and proper persons. It may be assumed that the children wish to stay with their sister and that their lives will be

less disrupted at this time if they are allowed to remain with the relative they know best. On the other hand, unless custody is given to their father they will remain to all intents and purposes orphans. If their friends inquire about their father they will either have to fabricate a story or admit their illegitimacy. If their sister marries, her husband might be unwilling to have them in his home. If the children are awarded to their father, they will become legitimate. (Civ. Code, § 230.) They will be placed in a normal home environment with one natural parent and will suffer social embarrassment only to the extent that their past may become known to their friends. In all likelihood the care and support they will receive from their father will be greater if they move into his home than if they remain essentially strangers to him. There are thus many considerations that support the conclusion that their best interests would be served by awarding custody to their father. There are also considerations that support the contrary conclusion of the trial court.

Psychology is not an exact science. If expert testimony were introduced in cases such as this in all probability it would be in conflict. The ordinary judge as well as the ordinary parent lacks the omniscience accurately to evaluate all of the various considerations that may enter into a custody problem. "The essence of custody is the companionship of the child and the right to make decisions regarding his care and control, education, health, and religion." (*Lerner* v. *Superior Court,* 38 Cal.2d 676, 681 [242 P.2d 321].) If a parent is fit he will be vitally concerned with the best interests of his child. By leaving to him the responsibility as to how those interests will be best served the court simply recognizes that "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. *Pierce* v. *Society of Sisters, supra,* [268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468]. And it is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter." (*Prince* v. *Massachusetts,* 321 U.S. 158, 166 [64 S.Ct. 438, 88 L.Ed. 645].)

Cases may arise in which the child's interests would be seriously prejudiced by awarding custody to his parent. In such cases, however, the parent's insistence on his right to custody despite the harm that would clearly result to his

child will itself be evidence of his unfitness. (*In re Bensfield,* 102 Cal.App. 445, 449 [283 P. 112] ; *Guardianship of Casad,* 106 Cal.App.2d 134, 152 [234 P.2d 647].)

In the present case the appeal is upon the judgment roll alone, and for the purposes of this decision we must accept the finding of the trial court that the father is a fit and proper person to be appointed guardian of the children. It bears emphasis, however, that the father of an illegitimate child comes before the court in at best a questionable light.

Although past indiscretions do not necessarily demonstrate present unfitness (*Prouty* v. *Prouty,* 16 Cal.2d 190, 193-194 [105 P.2d 295] ; *In re Green,* 192 Cal. 714, 721 [221 P. 903] ; see, also, *Clarke* v. *Clarke,* 35 Cal.2d 259, 261-262 [217 P.2d 401] ), such a father should be required to explain why he has not legitimated his child. A father who has the power to do so but does not, demonstrates his unfitness by his willingness to inflict upon his child the status of illegitimacy. Such a father must not be allowed to bargain with the court by offering to exercise his power to legitimate in exchange for custody. On the other hand, a desire to secure custody may be the outgrowth of a moral rehabilitation reflected in an effort to undo a past wrong by legitimating the child.

A father may legitimate his child by marrying the mother (Civ. Code, § 215) or "by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child." (Civ. Code, § 230.) On the record before us we must assume that the father did not legitimate his children because he was unable to do so. At the present time the father is married. To legitimate the children now he must have the consent of his wife to receive the children into his family. (Civ. Code, § 230.) There is no express finding that his wife is willing to receive the children into the family. On retrial the father must establish that the children will be legitimated as a minimum prerequisite to establishing his fitness for appointment as guardian.

SCHAUER, J.—I dissent.

This is a judgment roll appeal. The facts are not in dispute. The trial court found "That both petitioner FRIEDA HOWES and counter petitioner HARRY COHEN are fit and proper persons to be the guardian of the minors herein, and to have their . . . custody . . . That it is to the best interest and welfare of said minor children that FRIEDA HOWES be ap-

pointed guardian of their persons . . .'' The court also found that the mother of said children is deceased and that ''Petitioner [adult sister of the minors] has supported and cared for said minors since the death of the mother'' and that appellant is the natural father of the children and ''is remarried and has a family of the second marriage.'' Letters of guardianship were ordered issued to Frieda Howes.

Appellant's sole ground for reversal is that on the findings, he, as the children's natural father who is not found ''unfit,'' is as a matter of law entitled to judgment denying the petition of the children's sister and ordering the issuance of letters of guardianship to him. He argues, incidentally, that the finding ''That it is to the best interest and welfare of said minor children that FRIEDA HOWES be appointed guardian'' is immaterial, and must be disregarded. The majority opinion sustains appellant's position in its entirety except that, even though this is a judgment roll appeal, it states that a reexamination of the evidence shall be had.

Appellant does not aver that he desires custody and control of the children. He did not initiate proceedings seeking to be appointed guardian of these children and he does not allege that he ever has had them in his custody, or heretofore sought their custody, or that he ever has supported them. He appears only in response to the petition of Frieda and has contented himself with filing a document entitled ''OBJECTIONS TO APPOINTMENT OF GUARDIAN AND COUNTER-PETITION FOR APPOINTMENT OF GUARDIAN'' wherein he merely ''objects to the appointment of said FRIEDA HOWES as the Guardian of said children and desires that *if it is deemed by the Court necessary* that a Guardian be appointed, that he be appointed Guardian of said children.'' (Italics added.) It is also noted that in Frieda's petition for appointment as guardian the word ''illegitimate'' does not appear; the name of the mother does not appear; the fact of nonmarriage is not alleged; the pertinent and sufficient averments in respect to the mother are the simple words ''Mother deceased.'' How different are appellant's sensibilities! In his objections to Frieda's appointment he bluntly avers ''That said minor children are the illegitimate children of petitioner and their mother, MARGUERITE SMITH, now deceased.''

How eloquently it thus appears on the face of the judgment roll that even though appellant has not been adjudicated ''unfit,'' and has rather been decreed legally ''fit,''

whatever that may mean, he continues now to be as indifferent to the welfare of the children as, from the fact that they were born out of wedlock and that he does not claim to have ever had their custody,[1] it could be inferred he has been from the beginning. Could it be that the real ground for appellant's objections to having the children's adult sister appointed their guardian is a fear that in the interests of these minors she might seek to compel this man to contribute suitably to their support?

And there is still further affirmative evidence in this record, mere judgment roll though it be, of appellant's lack of concern for these children. Appellant asserts in his brief (and respondent concurs in this statement) that the hearing on the guardianship matter "was extremely brief and was based principally upon the report of the Probation Officer and upon an interview in Chambers between the trial judge and the two minor children." The substance of the interview is not shown in the record and the preference expressed by the children does not specifically appear, but appellant urges that such preference *"is immaterial."* (Italics added.) Can we doubt what that preference is?

Appellant argues further that "it is still the law of this State that a parent has a superior right to the custody of his minor children, provided only he is fit and proper to have such custody and *regardless of whether or not it would be better for such children* to be with a stranger." (Italics added.) Therefore, concludes appellant, the trial court "in awarding the guardianship of the children . . . to a stranger [their sister or half sister who was caring for and supporting them] against the wishes of the father who was a fit and proper person to have their custody, abused its discretion." It seems to me that on this record it is this court which abuses its discretion in reversing the order of the trial court.

Let us look further at this record. Nowhere therein nor in his briefs does appellant come forth with a clear and un-

---

[1]So far as the record on appeal shows appellant does not claim to have supported the children or even to have made any contribution toward their support. However, on the oral argument (at the first hearing) before us, one of the justices, going outside the record, asked counsel for appellant "Did he ever support the children?", and counsel replied "Yes." The inquiring justice also asked counsel for the respondent the question "The father did support these children?" and counsel responded "The father contributed somewhat to their support, yes." There was no stipulation that the record should be augmented by adding all or any part of the quoted questions and unsworn answers, or that any of such "evidence" was before the trial court.

equivocal declaration that he is willing to support his children, that he desires their personal custody, that he loves them and that he wants to best serve their welfare, and on that account wants to be their guardian; likewise he does not even state[2] that he wishes to receive them into his family and otherwise treat them as if they were legitimate, either in order that they may thereby become legitimated as provided by the Civil Code (§ 230), or in order to see to it that their best interest and welfare are subserved in other respects as well. Rather, the whole tenor of appellant's pleadings, briefs, and arguments indicates that he is stepping carefully around an assertion that he now wishes to assume full responsibility for the children, instead suggests that his chief interest is that no one else be placed in a position to assert rights of the children as against him, and that any authority he may have over the children not be lost, as would result from the appointment of another as their guardian (Civ. Code, § 204, subd. 1.) The entire record tends to confirm the conclusional finding of the trial court that the best interest and welfare of the children lie with their sister, respondent herein, rather than with appellant; nevertheless, the majority of this court, even on this judgment roll appeal, impliedly question the sufficiency of the evidence to support such finding, and argue that certain elements of assumed evidence and implications of some of the findings tend to support a contrary finding that the interests of the children would be better served by placing them in the custody of the father.

This case appears to me to again illustrate the poignant undesirability, which I pointed out in my dissents in *Roche* v. *Roche* (1944), 25 Cal.2d 141, 144-149 [152 P.2d 999]; *Stewart* v. *Stewart* (1953), 41 Cal.2d 447 [260 P.2d 44];

[2]Subsequent to the filing of this court's opinion when this cause was first before it, and while respondent's petition for rehearing was pending, counsel for appellant addressed a letter to the court in which it is stated, among other things, that "It is very clear to appellant that the judgment of the trial court was reversed and that as a result thereof, no further hearing is necessary . . .

"Counsel for appellant is able to give this Court positive assurance that immediately upon receipt of these children into the home of appellant, these children will be legitimatized . . .

"Requiring legitimation as a pre-requisite to awarding guardianship is to put the cart before the horse . . ."

It should be obvious that the letter from counsel was not before the trial court, is not in the record, is not signed by or binding on appellant, and cannot properly affect the disposition of a judgment roll appeal.

and *Guardianship of Kentera* (1953), 41 Cal.2d 639, 645 [262 P.2d 317], of requiring the trial court to find a parent to be "unfit" before it can confide the custody of a child to another person, even when the child's best interests are found to be with others. Who can say what "fit" or "unfit" may mean to different judges? If the term be cheapened to mean less fit by comparison—and there are those who argue that such interpretation should be given to it—then the finding that the best interests of the children require that they be placed with one person rather than with another is in effect a finding that, by comparison, the latter is unfit. But why should these children, already bearing the burden of having illegitimate parents (which, as noted hereinabove, their father in this record has unnecessarily alleged and has evidenced no concern about removing) be further burdened with a finding that their natural father is "unfit" to be their guardian? The statute does not require it. The children are both less than 10 years of age and it may well be that at some future time changed circumstances and changed attitudes of the father, and perhaps the wishes of the children themselves, will indicate that it would thereafter serve their best interest and welfare to be with the father.

As declared in the dissent in the Roche case, it is my view that we should have confidence in trial judges and in the processes of the law which enable them to view and hear at first hand the children, the parents and other claimants, and that their discretion in the premises should not be so rigidly limited as is done by the rule followed by the majority here. To require a trial court to find a parent "unfit" in order that it may accord the children their right to have their best interest and welfare promoted appears to me to be harsh, legalistic, unfair to both the children and the parent, and in contravention of the legislative intent.

Regardless of differences of opinion as to the desirability of the rule as applied in the Roche case it is quite unnecessary to apply it here. For this holding today there is neither statute nor precedent requiring or supporting it. The holdings of *In re Campbell* (1900), 130 Cal. 380 [62 P. 613], and *In re Mathews* (1917), 174 Cal. 679 [164 P. 8] (see, also, *Estate of Wise* (1918), 179 Cal. 423, 426 [177 P. 277]; *In re Green* (1923), 192 Cal. 714, 721 [221 P. 903]) that a parent of a minor child under 14 years of age, if found by the court to be "competent to discharge the duties of guardianship" was entitled to be appointed guardian in preference to a non-

parent, regardless of the best interest of the child, are both based upon the specific language of the first sentence of former section 1751 of the Code of Civil Procedure. That sentence was, however, repealed in 1931, and not reenacted, although the other provisions of the section were reenacted as sections 1406 and 1410 of the Probate Code. It thus appears that the Legislature, in recognition of what seems to me to be the protest expressed ·by this court in *In re Mathews, supra,* and *Estate of Wise, supra,* against statutes construed to require that the property·right of a parent in a child be considered superior to the best interest and welfare of the child, wisely decided to, and did, remove such requirement from the law of this state.

In the Mathews case, decided in 1917, the court pointed out (p. 683 of 174 Cal.), that "It is argued with great force that the trend of modern decisions is to regard as of primary importance the welfare of the minor himself. This is most true. The decisions to this effect are made either under the permission of the law, which contains no such restriction as that found [in 1917] in our section 1751, or else are given under the command of the law which, in effect, declares that over and above all else the controlling consideration shall be the welfare of the child. If we were thus at liberty to act, it might well be that the custody of this child, under the findings of the court, would be given to [the nonparent with whom the child had been living for some 10 years] . . ."

It is therefore my view that the courts of this state are no longer required by statute to arbitrarily disregard the welfare of the child whenever a legally "fit" parent is making claim, and need no longer adhere to the view expressed in *In re Campbell* (1900), *supra,* 130 Cal. 380, 382, that the right of the parent in the child is similar to that of the owner of property in his chattel and must "be regarded as coming within the reason, if not within the strict letter, of the constitutional provisions for the protection of property . . ." To place this property right conception of a parent's claim to children over and above the welfare of the children seems to me to be a throwback of generations if not of centuries. The mandate of our Legislature as expressed in section 1406 of the Probate Code is that "In appointing a general guardian of a minor, the court is to be guided by what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare; and if the child is of sufficient age to form an intelligent preference, the court may consider

that preference in determining the question . . ." These provisions, when construed with the provision of section 1407 of the same code, that "Of persons equally entitled *in other respects* to the guardianship of a minor, preference is to be given as follows: (1) To a parent; . . ." (italics added), appear to me to require that the first concern of the court should be directed toward determining "what appears to be for the best interest of the child in respect to its temporal *and* mental *and* moral welfare" (italics added) as specified by section 1406, and that only when the sum of all of these aspects of the child's welfare will be subserved equally well by having the parent as guardian will the parent's right be held as a matter of law superior.

I am further of the view that such a philosophy, rather than tending toward the weakening of family relationships and the assumption of arbitrary state control over children, will work towards the contrary result. Where, as here, although the parent is found legally "fit," it does not appear that as between parent and child there ever has been a family relationship, and where the parent's concern for his children's welfare and his wish to serve their best interests are unestablished and appear to be highly questionable, how can it be considered that any family relationship that might be established with him would be more desirable than that heretofore and presently enjoyed by the children with their sister, respondent herein who, it seems, has cared for them as a labor of love? Is it not more likely that they will grow to mature, responsible adulthood, to take a useful place in society, when living in the home in which the trial court found their best interest resides, rather than being compelled to leave that home for such abode, if any, as the father may be inclined to designate? Although I believe there is no question but that in the vast majority of cases the best interest of the child will lie with the natural parent and that trial judges surely can be depended on to so find, it nevertheless seems to me that this case points up and again emphasizes the necessity, the justice, and the rightness, of permitting trial judges the exercise of a wise discretion in deciding problems of custody and guardianship of children. There are many things in this record which, in the interests of the children, seem to cry aloud for support of the trial court's order, yet none of those things suggests that the trial judge should have found the father to be "unfit" to have custody of children. Indeed it would have been a cruel and unnecessary act for the trial

court to have found the father "unfit" to have custody of children, for there is another finding in the record. It is that this "Natural father is remarried and has a family of the second marriage." To this second family appellant well may be not only a legitimate husband and father but in truth a "natural" and a kindly, considerate one. Yet however fit he is in a legalistic sense, he may be the last one who, for the interests of the children, should be appointed their guardian.

The findings establish that the children have no estate. Such findings also establish, directly or impliedly, that the appellant is the one person who is primarily liable for the support of the children and against whom the guardian should assert rights on behalf of the children. But this court holds that as a matter of law, since appellant is not legally "unfit," the welfare of the children cannot even be considered, let alone given effect.

Although I have not discussed the question of illegitimacy as bearing upon any right of the father (except as it may be relevant before the trial court in determining what is for their best interest), it may be noted that while under the provisions of section 1403 of the Probate Code the consent of both parents, if living and capable of consent, is required for the appointment by will or deed of a guardian of a child, nevertheless the mother alone may make such appointment if the child is illegitimate. Also, section 1405 of the same code provides that the court may appoint a guardian "when no guardian has been appointed . . . by will or by deed . . ." These sections would appear to me to cast further doubt upon the absolute legal right here sought to be asserted by appellant-father. (See *In re Britt* (1917), 176 Cal. 177 [167 P. 863] ; *In re Imperatrice* (1920), 182 Cal. 355, 358 [188 P. 45].)

As already indicated there are some assumptions in the majority opinion, and some in the concurring opinion, which appear to be inconsistent with the trial court's findings, and to be indulged to the end of supporting a reversal rather than an affirmance. The majority and concurring opinions speak of a new trial. But this is a mere judgment roll appeal, and the reversal must be based on the findings or it is necessarily in defiance of the strict direction of section 4½ of article VI of the Constitution. Thus, as pointed out by counsel for appellant, there is no occasion for a new trial. On the majority holding appellant is, as a matter of law, entitled to

guardianship papers, yet both the majority and concurring opinions suggest a new trial.

The majority say ''There is an additional factor in the instant case. As far as appears the minors have not been legitimated. By awarding their custody to the father they are more likely to be legitimated . . . Unless the father has the right to custody it is not probable that he will receive the minors into his home and thus legitimate them.'' This speculation as to the existence or nonexistence of facts and as to possible future events, and as to the effect thereof on the weight or sufficiency of the evidence supporting the finding that it is to the best interest of the children that letters of guardianship issue to, and that they remain in the custody of, the respondent adult sister who has supported and cared for them since the death of their mother several years ago, has no legitimate place in an opinion disposing of a judgment roll appeal.

It cannot lawfully be assumed that on a new trial there can be any evidence which would justify not awarding the children's guardianship to the father, because, on evidence which cannot be doubted, he has already been found to be fit and that finding, as a matter of law, it is held, entitles him to a reversal of the judgment. If on this record he is entitled to a reversal, *a fortiori* he is entitled to letters of guardianship without further hearing. This has to be true, because otherwise the majority would be reversing a judgment without a showing of prejudice as required by section 4½ of article VI of the California Constitution and by section 475 of the Code of Civil Procedure. The burden is on appellant to show prejudice, i.e., a miscarriage of justice. On this judgment roll appeal he cannot possibly show prejudice entitling him to a reversal unless on that record (upon the findings) he is entitled to judgment in his favor, which means the issuance of letters of guardianship on the going down of the remittitur. Therefore, this court, if it upholds the law, must sustain the award of letters of guardianship to appellant upon the going down of the remittitur without further hearing in the trial court. But evidencing at last some slight weakening in its self-made rule of thumb for award of custody it suggests that there should be a new trial.

Also demanding mention, to avoid possible confusion, is the concurring opinion's statement (not concurred in by the majority) that ''On retrial the father must establish that the children will be legitimated as a minimum prerequisite

to establishing his fitness for appointment as guardian." This statement has no legitimate place in the opinion. As already mentioned repeatedly this is a judgment roll appeal. The evidence is not before us; it is conclusively presumed to be sufficient to support all findings and the findings squarely determine that the appellant is a fit person to be appointed guardian of the children here concerned. But if there is to be a new trial it is to be hoped that the quoted statement will not be accepted by the trial court. To accept it might well work a manifest injustice to the appellant father, and to his wife, and occasion unnecessary suffering both to these children and to the presently legitimate children of appellant and his wife. It may be, or it may not be, to the best interests of the children involved here that they be taken into the home and family of appellant. There might develop a quite natural resentment on the part of the legitimate children of the established family to what they could consider to be an intrusion. Their remarks to neighborhood children could lead to cruelties and griefs which only the sensitive can fully understand and which only the callous would willfully inflict. There can be far more sinister influences on the life of a child than the legal status of illegitimacy. If the appellant here has all the virtues which the concurring opinion assumes for him, then his good faith determination that the welfare of these children will best be served by not taking them into his household should be respected just as much as his possible determination to the contrary. In any event it is to me unthinkable that a trial court should find the appellant father here, if he is a good husband and father to his present family, to be "unfit" to have the custody of the children whose welfare is here at stake.

The extraordinary concept of "fitness" disclosed in the concurring opinion does not appear to, at least at this time, have the concurrence of any other justice of this court and is not, I think, likely to commend itself to many trial judges whose duty it is to deal face to face with live children and flesh and blood parents and custodians. Judges who handle such cases have, in my observation of their work, exhibited a high respect for the law, a conscientious fidelity to duty, and great wisdom and patience in seeking to determine the course that will best serve the interests of the children. Such judges, I think, are regretful that we arbitrarily deny to them the right to consider the welfare of the children as opposed to a

custody claim of a parent unless the parent be found "unfit." The trial judge, when he is confronted with facts which indicate that for a while the interests of a child imperatively demand placement with a person other than a parent, ordinarily uses that means to bridge the present emergency, and he looks to the future and possible restoration of the child to the custody of a parent (or parents) at a later date. The law, as enacted by the Legislature, contemplates such procedure and every custody order is subject to modification during the child's minority. A judge so engaged realizes that few domestic relations concepts could be more cruel in application and regrettable in result than a willingness to lightly—but necessarily publicly and indelibly—brand a parent as "unfit." Such branding would almost certainly mean that the parent could never hope to regain either the custody or respect or affection of his child; no more could the child hope to rejoin his parent. Such a branding could add immeasurably to the burdens and handicaps of the children affected. And it would do all this without any necessity therefor, simply to satisfy a court-made rule which is adhered to in direct derogation of the legislative policy.

It should further be pointed out that the concurring opinion, after at least suggesting lip service to the view that it would be harsh to place the rights of a "fit" parent above the best interests of the child, then goes on to assert that "The heart of the problem, however, is how the best interests of the child are to be served. Is the trial court more sensitive than the parent to what the child's best interests are, better qualified to determine how they are to be served? It would seem inherent in the very concept of a fit parent that such a parent would be at least as responsive as the trial court, and very probably more so, to the best interests of the child." Such an assertion completely ignores the obvious fact that it is in controversies in which the parent's responsiveness to the best interests of the child has been called into question, that trial courts are called upon to determine where such interests lie, and that in such controversies our Constitution and the Legislature have entrusted to trial courts exercising a proper discretion, rather than to either parents or appellate courts, the determination of the issue. I do not share at all the indicated deprecatory view of the wisdom of trial judges and I would leave with them, appreciatively, the full scope of discretion given them by the Legislature in the handling of the

very difficult and delicate problems which daily confront them in domestic relations court.

I would affirm the order appealed from.

EDMONDS, J.—In a proceeding to appoint a guardian for a minor child, the court must be guided "by what appears to be the best interest of the child in respect to its temporal and mental and moral welfare." (Prob. Code, § 1406.) The code provisions relating to the custody of a legitimate minor child, as construed in *Roche* v. *Roche*, 25 Cal.2d 141 [152 P.2d 999], *Stewart* v. *Stewart*, 41 Cal.2d 447 [260 P.2d 44], and *Guardianship of Kentera*, 41 Cal.2d 639 [262 P.2d 317], are a legislative determination that the child's interest will be best served if the right of the natural parent to his custody is made paramount to that of a stranger. In this connection, section 197 of the Civil Code specifically provides that "[i]f either the father or mother [of a legitimate unmarried minor child] be dead or unable or refuse to take the custody or has abandoned his or her family, the other is entitled to its custody, services and earnings."

There is no similar provision in regard to an illegitimate child. Section 200 of the Civil Code, which concerns the custody of such a child, gives that right to the mother without mention of the father's status upon her death. In short, there is no legislative determination that, when the mother is dead, the interest of the child will be better served by a custodial right in the father superior to that of any other person.

The conclusion reached in the majority and concurring opinions is based upon the rule which governs judicial determination of the custody of legitimate children. But there is far less reason to suppose that the generally undesired child of an illicit relationship will enjoy the same paternal love and affection as that of a legitimate one.

Great concern is expressed by my associates in regard to the probability of legitimating the child. According to Justice Carter, the child more likely will be legitimated if the father is given a paramount right to his custody. Justice Traynor takes the position that a willingness to legitimate the child is a minimum prerequisite to a showing of the father's fitness.

The probability of legitimation is a consideration which cannot be too strongly emphasized. But in my opinion, there is no reasonable basis for concluding that a father will be

more moved to do what is right if he is given a paramount right to custody. To permit the trial judge to ascertain first that the child will be legitimated before awarding custody to the father and, in the absence of such action, to award custody to another qualified person would more nearly achieve that objective. Otherwise the trial judge must award custody to the father without assurance that the child will be legitimated or, according to the alternative suggestion, may declare the father unfit if legitimation is not accomplished, despite the fact that the only hindrance may be the failure of his wife to consent.

The trial court found that the best interests of the children will be served by giving their custody to Frieda Howes. The appeal being on the judgment roll, it must be presumed that the evidence supports that determination. If upon a future application it should be shown that the children's interests would be better served because of a change in conditions of which legitimation of the children may be one, a different order may be made. But upon the present record, I would affirm the order of the trial court.

Gibson, C. J., concurred.